**UNITED STATES**

v.

**Specialist Five Tyrone E. JOHNSON, 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, US Army, Headquarters and Headquarters Company, 1st Brigade, 4th Infantry Division (Mechanized), Fort Carson, Colorado.**

**CM 432557.**

U. S. Army Court of Military Review.

Sentence Adjudged 27 Sept. 1974.

Decided 28 July 1976.

Appellate Counsel for the Accused: CPT John M. Nolan, JAGC; CPT Michael R. Caryl, JAGC; CPT Sammy S. Knight, JAGC; MAJ Richard J. Goddard, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT John F. Schmutz, JAGC; CPT John F. DePue, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

COSTELLO, Judge:

This case has been referred to us pursuant to Article 69, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 869. Accused, after requesting enlisted members on his jury, was convicted of larceny of food and willfully suffering loss of the same Government property in violation of Articles 121

and 108, UCMJ, 10 U.S.C. §§ 921 and 908, respectively. He was sentenced to forfeit $300.00 pay per month for three months and reduction to the grade of E–4 following instructions from the trial judge that the offenses were multiplicious for sentencing purposes. Because the sentence was so low we have a summarized, but adequate, record of this trial.

The principal questions before us rise from the fact that appellant had been tried once before on the same charges. At issue are the effect of an informal agreement between counsel, entered before the first trial; the availability of a defense of double jeopardy; a possible waiver of that defense; and the impact of the presence in the second trial of a charge as to which a complete defense existed. We hold that the informal agreement should be disregarded in this case; that appellant had a defense of double jeopardy which he did not waive; and that the combination of charges at the second trial did not work to his disadvantage.

The first trial began on 16 September 1974 with an Article 39(a) session at which appellant pled not guilty to Charge I, larceny, and its specification and guilty by exceptions and substitutions to Charge II and its specification. After questioning the accused, the military judge found the guilty plea provident and accepted it. During that inquiry, trial counsel told the judge that there was no pretrial agreement in the case.[1] Trial counsel also informed the judge that he had no evidence to present on either charge and "rested." The trial judge then found the accused guilty of Charge II and its specification (suffering loss of government property) with exceptions and substitutions and not guilty of Charge I and its specification (larceny).[2]

At the hearing on extenuation and mitigation, accused made statements inconsistent with his guilty plea. The judge determined the plea to have been improvident, granted accused's motion to withdraw the guilty plea, and declared a mistrial.

During the discussion of possible improvidence trial counsel disclosed that there was an oral pretrial "understanding" between counsel, one sanctioned by the staff judge advocate. It provided that if the accused "made it through providence" as to Charge II, the Government would offer no evidence as to Charge I. Without objection by defense counsel, the military judge declared that all findings that had been announced were "conditional" and set them aside. As noted, the present proceedings include a subsequent trial on both the original charges and specifications.

The principal issue in this case centers on the relationship between those two trials and specifically on the effect of the finding of not guilty of larceny entered by the military judge at the first Article 39(a) session. The power of a trial judge to enter such a finding is not disputed. Paragraphs 67 and 71, MCM 1969 (Rev.). However, we know of no authority to enter a "conditional" finding of not guilty or to set aside such a finding once one has been entered. Government counsel contend that the effect of the declaration of a mistrial upon such a finding is to negate it, and that was, apparently, the view of the defense below. Because the guilty plea, the Government's failure to put on evidence, and the trial judge's characterization of his findings as "conditional" all stemmed from the "informal" agreement entered by counsel and the staff judge advocate and only accidentally disclosed at trial, we must consider the effect of that agreement.

Such agreements are disquieting, at least, and this one is no exception. Where they contain terms void against public policy, we have condemned them out of hand. *United States v. Schaffer*, 46 C.M.R. 1089 (A.C.M.R. 1973); *United States v. Peterson*, 44

---

1. This was not deceit; the pleadings make us aware that some of the trial bench and bar distinguish "formal" from "informal" agreements, a matter to be dealt with later in this opinion.

2. *See* paragraphs 57 and 71, Manual for Courts-Martial, United States, 1969 (Revised edition) MCM 1969 (Rev.)), and Article 39, UCMJ, 10 U.S.C. § 839.

C.M.R. 528 (A.C.M.R. 1971). This agreement, so far as we know, contained no such term. However, its informality precludes certainty on that point and impairs " . . . continued scrutiny of the plea-bargaining process." *United States v. Holland,* 23 U.S.C.M.A. 442, 50 C.M.R. 461, 1 M.J. 58 (1975). *See also United States v. Troglin,* 21 U.S.C.M.A. 183, 44 C.M.R. 237 (1972); *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1970); *United States v. Cumming,* 17 U.S.C.M.A. 376, 38 C.M.R. 174 (1968); *United States v. Stevens,* 2 M.J. 488 (A.C.M.R.1975).

The agreement here is objectionable on two further grounds. One is a policy objection that informal, low-level agreements may never be disclosed. As here, if the appellant's testimony had not "improvidenced" his plea, no mention of the "deal" would have ever been made. Clearly, that which is not disclosed cannot be scrutinized. *Holland, supra.* Even where their existence is disclosed, the evidence of their contents tends to be limited to that which is necessitated by a confrontation at trial and disclosed only by hearsay representation, with the result that appellant tribunals are left uncertain about the total arrangement. That sort of situation was condemned by the Supreme Court in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

■ Finally, as here, the informal agreement tends to encourage usurpation of the convening authority's non-delegable powers to decide what shall be referred to trial and under what conditions. *United States v. Crawford,* 46 C.M.R. 1007 (A.C.M.R. 1972) [citing cases]. These substantial and unresolved threats to the integrity of the process dictate that we reject the agreement in this case. *See Jordan v. Commonwealth, Va.,* 225 S.E.2d 661 (1976). Consequently we will decide this case as if there had been no agreement at all.

■ That decision has no impact on the first Article 39(a) session which was conducted by all parties without disclosure of the agreement or reference to its terms.

At that session the trial judge entered the finding of not guilty of larceny mentioned above, after the Government stated that it would offer no evidence and "rested." The Government now contends that jeopardy did not attach because no evidence was offered on the general issue, but that argument overlooks the fact that there was an outcome to the proceedings. An Article 39(a) session which reaches findings is a trial. *United States v. Marell,* 23 U.S.C.M.A. 240, 49 C.M.R. 373 (1974). Although *Marell* dealt with findings adverse to an accused, the invocation of its principle is appropriate here because of the federal rule that jeopardy attaches when a trial judge makes a finding on the general issue and takes an action favorable to an accused, *e. g.,* dismissal of an indictment. *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). *Compare United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) *with United States v. Sanford,* 536 F.2d 871 (9th Cir. 1976).

■ Secondly, the absence of the agreement does not change the fact that appellant's motion to withdraw his guilty plea as to the charge of suffering loss to government property was properly granted by the trial judge. Thus, appellant was subject to retrial on that charge. However, the convening authority re-referred both charges to a new court, and appellant did not object on grounds of former jeopardy. Did that failure amount to consent to retrial within the meaning of Article 44, UCMJ, 10 U.S.C. § 844 and the rule in *United States v. Schilling,* 7 U.S.C.M.A. 482, 22 C.M.R. 272 (1957)? We think not. No consent is to be found in the aborted pretrial agreement and none was explicitly given at the second trial. Only a waiver by failure to object might validate that aspect of the second trial, but the doctrine of passive waiver is no longer apposite with respect to the defense of former jeopardy, if it ever was.

■ The protection against former jeopardy is a " . . . *fundamental* ideal in

our constitutional heritage. . . . " and "[l]ike the right to trial by jury, it is *clearly 'fundamental to the American scheme of justice'*". *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). [Emphasis supplied.][3]

Four years before *Benton*, but also well after *Schilling*, the Supreme Court decided *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). There the Court was unwilling to find a waiver of Fourth Amendment objections to evidence solely from counsel's inaction at trial and remanded for findings on the existence of a basis for the lack of timely objection. *See United States v. Anderson*, 514 F.2d 583, 586 (7th Cir. 1975). *Henry* and *Benton* have led state courts which previously had a rule like *Schilling* to reverse themselves and permit objections to double jeopardy to be raised for the first time on appeal. *State v. Corrales*, 26 Ariz.App. 344, 548 P.2d 437 (1976); *People v. McPherson*, 21 Mich.App. 385, 175 N.W.2d 828 (1970); *and see Muncy v. State*, Tex.Cr.App., 505 S.W.2d 925 (1974).[4]

Turning back to our military practice, we note a gap in the development of our jurisprudence. Cases from 1953 and 1957 indicate that the bar of double jeopardy could be passively waived. *United States v. Schilling*, 7 U.S.C.M.A. 482, 22 C.M.R. 272 (1957) and *United States v. Kreitzer*, 2 U.S. C.M.A. 284, 8 C.M.R. 84 (1953). However, just 11 months after *Schilling* the Court of Military Appeals decided *United States v. Julius* in which it was held that a specification which did not state an offense could be attacked for the first time at any level. 8 U.S.C.M.A. 523, 25 C.M.R. 27 (1957). In terms of the balance between orderly pro-

cessing of cases and the need to protect the rights of an accused person, we see no difference between the failure to state any offense at all and the statement of an offense as to which the accused is not subject to trial. Recently, the Court of Military Appeals has also expressed its disapproval of other applications of the doctrine of passive waiver: *United States v. Harden*, 24 U.S.C.M.A. 76, 51 C.M.R. 249, 1 M.J. 258 (1976) [failure to object to misadvice on maximum sentence]; *United States v. Morales*, 23 U.S.C.M.A. 508, 50 C.M.R. 647, 1 M.J. 87 (1975) [failure to object to inadmissible document]; *United States v. Graves*, 23 U.S.C.M.A. 434, 50 C.M.R. 393, 1 M.J. 50 (1975) [failure to object to lack of instructions on voluntariness of a confession]. The Court in *Graves* noted that the passive waiver doctrine ". . . has been restricted to actions of trial defense counsel which leave appellate tribunals with insufficient factual development of an issue necessary to resolve a question of law raised on appeal." 23 U.S.C.M.A. at 437, 50 C.M.R. at 396, 1 M.J. at 53. All of the facts necessary to resolve the jeopardy issue are before us here, so the policy bottoming the waiver doctrine is not applicable. *See* note 4, *supra*.

█ In short, then, we find that the gap in our military jurisprudence has been closed. The perspective on passive waiver supplied by *Graves* and the Supreme Court's definition of the nature of the protection against double jeopardy permit the confident statement that jeopardy is not subject to such waiver. We do not by this overlook paragraph 67a of the *Manual* which appears to list double jeopardy among those defenses which may be waived

---

**3.** Benton had been tried for burglary and larceny (same transaction), but the jury acquitted him of larceny. Then the Maryland Court of Appeals held juries such as Benton's to have been appointed wrongly. Benton was reindicted and retried, over his objection, on both counts. The Supreme Court found that Benton had been twice placed in jeopardy despite the first void indictment and trial saying that the government cannot assert its own error " . . . to deprive the defendant of the ben-

efit of an acquittal by a jury." 395 U.S. at 797, 89 S.Ct. at 2064.

**4.** Though not discussed by these courts, their results appear to flow from the distinction generally recognized in state courts between attacks on the constitutionality of a statute or court rule and those on the fairness of the process itself. The former are waived by inaction; the latter are not. *See People v. Graves*, 23 Ill.App.3d 790, 320 N.E.2d 95 (1974).

by non-assertion at trial. That rule in the *Manual* is qualified by the introductory phrase, "Except as otherwise stated . .," which incorporates the language of Article 44(a), UCMJ, prohibiting second trials of a person "without his consent." The development of the passive waiver rule and the consequences of the definition of the fundamental nature of the right combine to illuminate the content of the phrase "without his consent." To try one a second time the Government must show a knowing, conscious election. *See United States v. Florczak,* 49 C.M.R. 786 (A.C.M.R. 1975).

▮ Thus, we hold that the defense of former jeopardy is one of constitutional dimensions which we must accept though raised for the first time on appeal. *Burns v. Wilson,* 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); *Courtney v. Williams,* 24 U.S.C.M.A. 87, 51 C.M.R. 260, 1 M.J. 267 (January 23, 1976). Having established above that the trial judge's action at the first Article 39(a) session was an acquittal, we must condemn the second trial of appellant on the same charge. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Florczak, supra.*

The final point is the possibility of prejudice to appellant from the combination of the chargeable offense with one not chargeable at the second trial. We have examined the evidence of record in the light of the sentence and find no prejudice. It is clear that the jury grasped the reality of appellant's conduct and imposed an appropriate sentence. *See United States v. Hunotte,* 50 C.M.R. 755 (1975), *pet. den'd.* 50 C.M.R. 904.

Accordingly, the findings of guilty of Charge I and its specification are set aside and the charge is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the above-indicated error and the entire record, the Court affirms the sentence.

Senior Judge CLAUSE and Judge DONAHUE concur.