**UNITED STATES, Appellee,**

v.

**Captain Michael J. CORRIERE,**
**038–36–4445, United States**
**Army, Appellant.**

**CM 444764.**

U.S. Army Court of Military Review.

31 July 1985.

Captain Paul E. Conrad, JAGC, argued the cause for appellant. With him on brief were Lieutenant Colonel William P. Heaston, JAGC, and Major Lawrence F. Klar, JAGC.

Captain Richard G. Mann, Jr., JAGC, argued the cause for appellee. With him on brief were Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, and Major Patrick M. Flachs, JAGC.

Before McKAY, LYMBURNER, and WERNER, Appellate Military Judges.

OPINION OF THE COURT

McKAY, Senior Judge:

Captain Corriere was convicted by a general court-martial of numerous offenses including leaving his place of duty, violation of general regulations by possessing drug

abuse paraphernalia and improperly safeguarding classified information, conduct unbecoming an officer by entering a brothel for the purpose of engaging in sexual activity with a woman other than his wife, and wrongfully using, possessing, and distributing marijuana. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as includes dismissal from the service, confinement at hard labor for 15 months, and forfeiture of all pay and allowances.

This case is before the Court for mandatory review pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1982). Two issues among the eight assignments of error by Captain Corriere concern the Court at this time. The first issue involves Captain Corriere's contention that there was an illegal *sub rosa* condition to the plea bargain that rendered his guilty plea improvident. The second issue involves the appellant's contention that his trial was affected by unlawful command influence.

Approximately nine months after the trial, Corriere's assistant defense counsel executed a sworn statement in which he asserted that during the negotiations of the plea bargain with the 1st Armored Division Staff Judge Advocate, an agreement was reached that called for a favorable sentence limitation in return for, *inter alia*, a defense agreement not to argue defense motions previously filed with the military judge involving discovery, constitutional issues and unlawful command influence. No such motions are contained in the record of trial or allied papers. Further, there is no condition included in the written plea bargain requiring the appellant to do anything with respect to motions, and that document expressly states that it constitutes the entire pretrial agreement. The post-trial statement of the assistant defense counsel also acknowledges that at the trial, counsel for both the prosecution and defense assured the military judge that all agreements between the parties were stated in the written plea bargain. The assistant defense counsel also assured the military judge at the trial that the decision not to

pursue the previously filed motions was a tactical one made after consultation with the accused. The division staff judge advocate executed a post-trial statement in which he denied any agreement with the defense in this case requiring waiver of motions. Testimony of the staff judge advocate, given on 19 April 1984 in a collateral investigation, indicates, however, that he did reach a *sub rosa* agreement concerning the defense motions with the appellant's assistant defense counsel and that he discussed the matter with the convening authority. Captain Corriere also executed a post-trial statement wherein he states that he was never advised by either of his defense counsel of the existence of any condition requiring the waiver of defense motions.

These post-trial statements raise two significant questions: Was there a *sub rosa* agreement between the staff judge advocate and the appellant's assistant defense counsel that counsel concealed from the military judge? If so, how does such an agreement and its concealment affect Corriere's trial? We will consider the latter question first, as the existence of a *sub rosa* agreement may be of no consequence if it is legally unobjectionable.

■ A provision in a plea bargain requiring an accused to waive all defense motions is against public policy and is void. *United States v. Schaffer*, 46 C.M.R. 1089 (A.C.M.R.1973); *United States v. Peterson*, 44 C.M.R. 528 (A.C.M.R.1971); *see United States v. Troglin*, 44 C.M.R. 237 (C.M.A. 1972); *United States v. Cummings*, 38 C.M.R. 174 (C.M.A.1968). Nor may plea bargains contain provisions that limit the order or timing of motions or that deny an accused a fair hearing. *United States v. Holland*, 1 M.J. 58 (C.M.A.1975). Unwritten or so called gentlemen's agreements must be revealed to the trial judge. *United States v. Troglin, supra; see Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *cf. United States v. King*, 3 M.J. 458 (C.M.A.1977) (military judge required to ascertain existence of

*sub rosa* agreement to establish guilty plea is provident); *United States v. Green,* 1 M.J. 453 (C.M.A.1976) (military judge required to inquire into all terms of pretrial agreement and assure that the accused understands each condition). The informality of unwritten agreements precludes certainty on the point covered and impairs judicial scrutiny of the plea bargaining process. *United States v. Johnson,* 2 M.J. 541, 544 (A.C.M.R.1976). The existence of an undisclosed agreement does not, per se, render void the plea bargain, *United States v. Myles,* 7 M.J. 132 (C.M.A.1979); *United States v. Elmore,* 1 M.J. 262 (C.M.A.1976), or vitiate the providence of a guilty plea. *United States v. Cooke,* 11 M.J. 257 (C.M. A.1981).

▮ It is concluded that whether in a particular case a *sub rosa* agreement is legally objectionable depends upon the nature and content of its specific provisions. Accordingly, to make a determination in this case the Court would have to look first at the motions that were apparently the subject of the alleged agreement between the staff judge advocate and counsel. That is not possible because the motions are not contained in the record of trial.

▮ It is presumed that any motion filed with the trial judge asserting the issue of unlawful command influence related to the 25 March 1983 incident at Pinder Barracks which involved this and some twenty or more other cases tried in the 1st Armored Division. *See United States v. Cruz,* 20 M.J. 873 (A.C.M.R.1985) for a discussion of that incident. Should that prove to be the case, then that issue and the possible prejudicial impact upon this appellant are of such vital importance as to have required notice to the military judge and possibly litigation, or resolution during a providency inquiry, as opposed to resolution in a plea bargain. *See United States v. Alexander,* 19 M.J. 614 (A.C.M.R.1984); *United States v. Treakle,* 18 M.J. 646 (A.C.M.R.1984) (en banc), *pet. granted,* 20 M.J. 131 (C.M.A.1985). Undoubtedly, an agreement requiring an accused to withdraw a motion of this type would be akin to those condemned by the Court in *United States v. Schaffer, supra,* and *United States v. Peterson, supra,* and would be void as against public policy. Additionally, the record of trial indicates that the motions involving constitutional issues concerned the admissibility of a pretrial statement made by the appellant. That issue, too, would involve, on its face, vital matters that should not be the subject of negotiation in a plea bargain. *But see United States v. Jones,* 20 M.J. 853 (A.C. M.R. 1985). Obviously if these type provisions cannot be included in a plea bargain, they cannot be the subject of a *sub rosa* agreement upon which the plea bargain is conditioned. Accordingly, it is necessary to determine here if in fact the alleged *sub rosa* agreement was made. Until that is accomplished the effect of its concealment from the military judge need not concern the Court.

▮ Examination of the evidence of record indicates that Captain Corriere's assistant defense counsel was untruthful either when he told the trial judge there were no undisclosed agreements, or in his post-trial statement wherein he says the opposite. It also appears that the staff judge advocate either was untruthful, did not understand the significance of his 19 April 1984 testimony, or has not yet fully and adequately clarified his understanding of the negotiations with Captain Corriere's assistant defense counsel on this matter. Resolution of the questions raised by these various conflicts is also required before there can be a final decision on the existence of a *sub rosa* agreement.

The information available to the Court is inadequate to allow it to decide the merit of the two assignments of error. Further, the Court believes that the factual resolution of the existence of a *sub rosa* agreement and the providency of the appellant's guilty pleas, as well as questions involving the conduct of the attorneys involved in the trial of this case, can be much better obtained in a hearing in which all are present and can be heard and observed by the fact finder. Accordingly, we will return the

case for a limited hearing and factual findings.

The record of trial is returned to The Judge Advocate General for such action as is required to conduct a limited hearing ordered by a different convening authority. At the hearing the military judge will receive all available evidence bearing on the issue of whether any *sub rosa* condition, either actual or by implication, to the plea bargain agreement in this case was made between any counsel representing the appellant and the staff judge advocate or the convening authority, 1st Armored Division, and whether the appellant was aware of such agreement, if it existed.

The military judge will hear the respective contentions of the parties, permit the presentation of witnesses and evidence, issue orders and rulings as are appropriate, and enter findings of fact and conclusions of law with respect to the issue of a *sub rosa* agreement. The military judge will, within his discretion, hear evidence on other issues, including unlawful command influence, and will make other findings and orders as are necessary or appropriate. The record will then be presented to the convening authority for review and appropriate action.

In the event the convening authority to whom this case is referred deems a limited hearing impracticable, he will set aside the findings and sentence and either order a rehearing or dismiss the charges.

Judge LYMBURNER and Judge WERNER concur.