UNITED STATES, Appellee,

v.

Captain Michael J. CORRIERE,
038–36–4445, United States
Army, Appellant.

CM 444764.

U.S. Army Court of Military Review.

22 May 1987.

For Appellant: Captain Floyd T. Curry, JAGC (argued); Lieutenant Colonel Joel D. Miller, JAGC, Major Dale K. Marvin, JAGC (on brief).

For Appellee: Captain Carlton L. Jackson, JAGC (argued); Lieutenant Colonel Larry D. Williams, JAGC (on brief).

Before RABY, LYMBURNER and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

PER CURIAM:

This case is before the court for further review pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866

(Supp. I 1983) [hereinafter UCMJ] following completion of a limited evidentiary hearing as previously ordered by the court. *United States v. Corriere,* 20 M.J. 905, 909 (A.C.M.R.1985).

Appellant was the only officer arrested at a mass apprehension conducted at Pinder Barracks, Federal Republic of Germany, on 25 March 1983. See *United States v. Cruz,* 20 M.J. 873, 875–877 (A.C.M.R. 1985) (en banc), *petition granted,* 22 M.J. 100 (C.M.A.1986) for a full discussion of that incident. He was convicted by a military judge sitting as a general court-martial of offenses involving violations of Articles 86, 92, 133, and 134, UCMJ, 10 U.S.C. §§ 886, 892, 933, and 934 (1982), respectively.

We have considered the appellant's assertions of error and his response to those issues specified by the court upon the return of the record following the limited hearing conducted in this case. The appellant's allegations concerning unlawful command influence and the existence of a *sub rosa* pretrial agreement merit discussion.

### I. Command Influence

Appellant asserts that the mass apprehension conducted by the special court-martial convening authority, Colonel (COL) B, deprived him of due process of law. Specifically, he alleges that the circumstances surrounding the apprehension denied him a fair forum in which to have his case tried and constituted an undue chilling influence on the court-martial process. We find that the appellant has failed to provide sufficient facts which would distinguish his case in any substantial respect from the "totality of circumstances" presented to this court sitting as a whole in *United States v. Cruz.* Accordingly, we are satisfied that the precedent of *Cruz* is dispositive of the issue of command influence here asserted. Further, appellant has failed to show how his decision to plead guilty was affected.[1,2]

---

1. Assuming, *arguendo,* the existence of command influence, we are satisfied that the guilty plea in this case was not coerced, and find no unfairness in letting said plea stand. *See United*

*States v. Thomas,* 22 M.J. 388, 395 (C.M.A.1986) (in view of safeguards surrounding the entry of

2. See note 2 on page 703.

We find that there was more than sufficient evidence presented at the limited hearing in this case to support the following factual findings by the military judge:

That potential witnesses on the accused's behalf who were identified and approached to testify, with one exception, were not reluctant to provide such evidence and exhibited no reluctance based upon percieved [sic] command pressure resulting from either the mass apprehension formation or apparently any other source.

That identified and available witnesses on this accused's behalf would have provided testimony that in their opinion the accused was an average officer and personably [sic] and, in their opinion, a good citizen of good moral character.

That potential government witnesses in rebuttal to such testimony were percieved [sic] by the defense to be readily available whose testimony could prove potentially damaging to the defense posture on extenuation and mitigation should the defense "open the door" to such testimony.

That accordingly, as a tactical decision, the defense elected not to present such witnesses at that stage of the proceedings.

Accordingly, we find the command influence issue to be without merit.

## II. *Sub Rosa* Agreement

In this court's initial review pursuant to Article 66, UCMJ, we noted that some nine months after trial, appellant's assistant defense counsel, CPT V, executed an affidavit. In the affidavit, he asserted that during plea bargain negotiations with the Division Staff Judge Advocate, then Lieutenant Colonel (LTC) G, he offered not to argue motions concerning illegal command influence and constitutional issues in return for a favorable sentence limitation. Lieutenant Colonel G, in a statement given on 19 April 1984, indicated that CPT V stated that "we won't make any motions if you give us [agree to limit confinement to] 15 months." At that time, LTC G replied that "that can't be part of the deal unless we write it in the deal." He later agreed to take a fifteen month agreement to the convening authority. His stated rationale was that "I didn't want a sloppy record of 200 pages of motions. I wanted a clean deal cut." He further stated that he went to the convening authority and recommended that "we better take it. I don't know what happened at Pinder Barracks during the bust." Defense Appellate Exhibit L, at 54. Lieutenant Colonel G later executed an affidavit in which he denied requiring a waiver of motions as part of the pretrial agreement. Appellant also filed a post-trial affidavit with this court, wherein he states that he was never advised by his defense counsel of the condition requiring the waiv-

---

guilty pleas the court perceived no unfairness in letting stand the guilty pleas entered in cases from the 3d Armored Division), *cert. denied,* —— U.S. ——, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987).

**2.** There is evidence to support a finding that, *at the moment of the appellant's apprehension,* COL B "directed" appellant to "cooperate with the CID." Colonel B had denied making the statement at the appellant's Article 32 hearing. Subsequent to the Article 32 investigation, COL B reportedly told the trial counsel that he had, in fact, directed appellant "to cooperate." Appellant's assistant trial defense counsel, Captain (CPT) V, in his affidavit filed with this court, pointed to this inconsistency and stated that had he known about COL B's admission concerning his statement to appellant, the appellant "would have pled not guilty." Defense Appellate Exhibit F.

We view the statement made to appellant in a different light than CPT V, and regard counsel's statement concerning the plea decision with incredulity. The circumstances of the apprehension clearly imply that COL B was directing appellant to cooperate with the personnel conducting the apprehension, that is, he was to deport himself in a manner to ensure that his arrest was peaceful and without resort to any actions which would further besmirch his standing as a commissioned officer. In light of the fact that appellant was the sole officer apprehended, we find this to be the more reasonable explanation of the remark, and not, for example, that the appellant was receiving "orders" to waive any of his constitutional rights. Moreover, we are satisfied that appellant could not reasonably believe that he was being ordered by COL B to waive his rights to silence and against self-incrimination.

er of defense pretrial motions. His appellate counsel alleged that appellant's guilty plea at trial was improvident as it was the product of an illegal *sub rosa* agreement concealed by counsel from the military judge.

Based on the post-trial statements, the court ordered a limited evidentiary hearing and posited two questions: Was there a *sub rosa* agreement between the staff judge advocate and the appellant's assistant defense counsel that was concealed from the military judge? If so, how does such an agreement and its concealment affect appellant's case? *United States v. Corriere*, 20 M.J. at 907.

### a. Existence of An Agreement

■ Upon consideration of the entire record, including the testimony and evidence presented at the limited hearing, we conclude that there was no *express* agreement that motions were to be waived as a condition precedent to the pretrial agreement. However, appellant has established, and we so find, that an *implied* agreement existed that appellant would receive a pretrial agreement limiting confinement to fifteen months in consideration for his voluntary election—ostensibly a tactical decision—to waive those pretrial motions previously submitted to the military judge.[3]

The limited hearing in this case was extensive. Included in the findings of fact by the military judge is the following:

[T]he decision to forego the previously filed motions was ... a tactical decision on the part of the defense, which is consistent with counsels [sic] representations to the Military Judge at trial. A decision of which the defense appraised [sic] the SJA with a view towards extracting from him additional concessions with regard to the period of confinement but with full knowledge that the defense

decision was not being offered or demanded as a part of the agreement.... That accordingly there was no *sub rosa* agreement, illegal or otherwise, under the facts of this case but rather an unrewarded concession on the part of the government upon being informed of the defense's anticipated course of action. A course of action which is noted was not binding upon the defense.

As above noted, we reach a different factual conclusion in regard to the existence of an agreement. *See* UCMJ art. 66(c).

A characterization of the nature of the assistant defense counsel's offer must be formulated in light of the circumstances which existed in the 1st Armored Division following the Pinder Barracks incident. We believe LTC G's statement, made in April, 1984, in which he stated that he "wanted a clean deal cut," and also believe that he possessed a genuine concern over possible defense motions—even assuming that the government would have ultimately prevailed on the merits. Lieutenant Colonel G's expression to the convening authority that "we better take the deal" clearly implies that, in his mind, an agreement had been reached—albeit not expressed in writing and based on his professional relationship with the assistant defense counsel—that motions would not be raised if the deal was accepted.

It is also apparent that the defense *had filed* pretrial motions on issues which would ultimately come to the attention of this court, sitting as a whole. *See United States v. Cruz*, 20 M.J. at 873. The defense counsel's voluntary and tactical decision was precipitated by an impasse in negotiations concerning the sentence limitation to confinement, and was made *concurrently* with his suggestion of a limitation of confinement to fifteen months. The fol-

---

**3.** This court had concluded that whether in a particular case a *sub rosa* agreement is legally objectionable depends upon the nature and content of its specific provisions. *Corriere*, 20 M.J. at 908. However, due to the evidence obtained at the limited hearing, this court has determined as more appropriate the application of the guidance found in *United States v. Mitchell*, 15 M.J.

238, 241 (C.M.A.1983), wherein Chief Judge Everett, in a concurring opinion, stated: "So long as the trial and appellate processes are not rendered ineffective and their integrity is maintained ... some flexibility and imagination in the plea-bargaining process has been allowed by our court."

lowing dialogue at the limited hearing between the Military Judge (MJ) and now COL G is revealing:

Q: (MJ) [A]s you indicated in your testimony, *had [CPT V] not said what we're going to do is forego the motions, had that not occurred you would not have agreed to the pretrial agreement.*

A: (COL G) *For 15 months. That's probable.*

Q: Would you have agreed to a pretrial agreement for 18 months?

A: Oh, yes.

Q: Because that's what you were asking for to begin with?

A: Yes, Sir.

Q: With the motions still being an active consideration?

A: That's right, oh, yes. The motions were never mentioned until—until this impasse.

(Emphasis added). It is apparent that the staff judge advocate was satisfied that motions would not be made when he agreed to a fifteen month limitation. Thus, we find that LTC G's statement in April, 1984, that the defense counsel stated that "we won't make any motions if you give us 15 months," is credible and consistent with their testimony at the limited hearing.

The finding of the military judge at the hearing that the defense was not "bound" as to motions does not persuade us that a *sub rosa* agreement did not, in fact, exist between the appellant and the convening authority or his staff judge advocate. Clearly the parties had entered into a "gentlemen's" agreement—"an agreement secured only by the honor of the participants"[4]—that motions would not be raised. *Cf. United States v. Troglin,* 44 C.M.R. 237 (C.M.A.1972) (understanding or "gentlemen's" agreement by defense counsel not to raise motions). Consequently, although all parties attempted to walk a legal tightrope to avoid a *sub rosa* agreement, we find that they were unsuccessful,

and consequently a gentlemen's agreement was formed that the appellant would receive a pretrial agreement limiting confinement to a maximum of fifteen months in consideration for his self-proclaimed voluntary election to waive all motions. We are convinced that the defense counsel's statement expressly advising the staff judge advocate of the defense's prospective course of action was the consideration for and did induce the staff judge advocate's decision to agree to a sentence limitation of fifteen months.

■ Due to constitutional standards, pretrial agreements in criminal cases are not always governed by contract principles. *United States v. Koopman,* 20 M.J. 106, 110 (C.M.A.1985) (citing *Virgin Islands v. Scotland,* 614 F.2d 360, 364 (3d Cir.1980)). However, as noted in *Koopman,* there has been no wholesale rejection of contract law in the judicial consideration of these agreements:

[T]he courts have understandably drawn heavily on the ready analogies of substantive and remedial contract law to supply the body of doctrine necessary to order plea bargaining practices.... To the extent therefore that there has evolved any general body of "plea bargain law," it is heavily freighted with those contract law analogies.

*Koopman,* 20 M.J. at 110 (quoting *Cooper v. United States,* 594 F.2d 12, 15–16 (4th Cir.1979)). We feel no compunction in holding that, due to the unique circumstances surrounding the negotiations, the parties involved, and the timing of the presentation of the respective positions of the parties, an implied contract or gentlemen's agreement existed.

#### b. Providency of the Plea

Based upon the record, this court finds that appellant was kept fully advised by his counsel during the plea bargain negotiations.[5] Significantly, at the court-martial,

---

**4.** Webster's Third New International Dictionary, p. 948 (G.C. Merriam Co.1976).

**5.** At the limited hearing CPT V testified: "[A]t that point I just didn't think that we could even prevail on that issue. Was it a legitimate issue? Maybe, maybe not. I think had he not agreed

the defense counsel advised the military judge that the written pretrial agreement encompassed the entire agreement between the parties, and appellant was present when the following dialogue occurred between his assistant trial defense counsel and the military judge:

MJ: Now, Counsel for the Defense, I ask this question because I was served several notices of motions and you have made no motions. Was that decision not to make motions at this trial anyway influenced by an agreement between counsel or the counsel and the convening authority that those motions would be not [sic] made, if an agreement was entered into? In other words, was the giving up of those motions part of the agreement?

ADC: It was not, Your Honor. It was a tactical decision on the part of defense counsel *after consultation with the accused.*

MJ: *It was, in no way, a bargained-for item?*

ADC: *That's correct,* Your Honor.

MJ: Thank You. Do you have any questions, Captain Corriere, at all, about this agreement.

ACC: No, Your Honor.

(Emphasis added). It is clear that these in-court statements by the assistant defense counsel are contradicted by his statement in his post-trial affidavit—that the pretrial agreement was .reached in return for the defense statement not to raise motions. It is also apparent that appellant was present in open court when his attorney represented to the judge that no agreement on motions existed, ånd that appellant made no dissent to this representation. *Cf. United States v. Cooke,* 11 M.J. 257, 261 (C.M.A.1981) (accused's presence and conduct in open court ratified his counsel's disclaimer of the existence of a pretrial agreement).

■ As noted in our previous opinion, unwritten or gentlemen's agreements must be revealed to the trial judge. *Corriere,* 20 M.J. at 907. *See United States v. Troglin,* 44 C.M.R. 237 (C.M.A.1972); *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *see also United States v. Muller,* 21 M.J. 205 (C.M.A.1986) (existence and terms of any pretrial agreements to be established one way or another at trial). *Cf. United States v. King,* 3 M.J. 458 (C.M.A.1977) (military judge required to secure from counsel confirmation that written agreement encompasses all of the understandings of the parties); *United States v. Johnson,* 2 M.J. 541, 544 (A.C.M. R.1976) (unwritten agreements impair judicial scrutiny by appellate tribunals). However, the existence of a *sub rosa* agreement does not, *per se,* render void the plea bargain or vitiate the providence of a guilty plea. *Corriere,* 20 M.J. at 908 (citing *United States v. Myles,* 7 M.J. 132 (C.M.A.1979), *United States v. Elmore,* 1 M.J. 262 (C.M. A.1976), and *United States v. Cooke,* 11 M.J. at 257).

■ Subsequent to our opinion ordering a limited hearing in this case, the Court of Military Appeals held that a pretrial agreement waiving motions to suppress evidence was not invalid where the waiver provision originated from the accused. *United States v. Jones,* 23 M.J. 305 (C.M.A.1987). *See also United States v. Zelenski,* 24 M.J. 1 (C.M.A.1987) (guilty plea not invalidated by inclusion in plea agreement of provision waiving trial by members). *Cf. United States v. Kitts,* 23 M.J. 105, 108 (C.M.A. 1986) (it is against public policy to *require* an accused to withdraw an issue of unlawful command influence in order to obtain a pretrial agreement) (citing *Corriere,* 20 M.J. 905). The court in *Jones* noted that many institutional safeguards are now in place which provide assurance that an accused understands the meaning and effect

with that Captain Corriere would probably still be in prison today. I discussed that with Captain Corriere when we got the 15 month deal. We told him that was the best we could do. We had hoped for 12 months. He understood. He asked about the motions and we told him we're

not going to run the motions.... It was his decision, based on our professional and personal advice as to whether he should accept the deal. If he didn't want to accept it, we were ready to litigate."

of each provision of a pretrial agreement, see *United States v. Green*, 1 M.J. 453 (C.M.A.1976), and that specific inquiries of counsel have been mandated to ensure that no *sub rosa* agreement exists, see *United States v. King*, 3 M.J. 458 (C.M.A.1977). It is through strict compliance with these safeguards that a reviewing court is able to determine the voluntariness of a guilty plea, and that "complete public confidence in the plea-bargain process" may be engendered. *Jones*, 23 M.J. at 308. This case is distinguishable from *Jones* in that the agreement, because it was not disclosed to the military judge, was not subject to the institutional safeguards in place.

Based on the entire record in this case, however, it is clear that the waiver of motions was a freely conceived defense product, in the best interests of the accused, and part of a "strategic defense initiative" to achieve a successful case outcome.[6] *Jones*, 23 M.J. at 305. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Haston*, 21 M.J. 559 (A.C.M.R.1985) (presumption exists that counsel will fulfill role in the adversary process). We are satisfied that the appellant was aware of a possible command influence issue, and that he fully concurred in the tactical decision announced by defense counsel in open court to waive all previously filed motions. *Cf. United States v. Deachin*, 22 M.J. 611 (A.C.M.R.1986) (affirmative waiver by trial defense counsel on disqualification of convening authority); compare *Troglin*, 44 C.M.R. at 242 (court *unable* to find any indication that the accused knew of, was a party to, or was informed of any promise not to raise a motion). Thus, under these circumstances, where *we are able* to determine that the accused knew of, and was a party to, the decision to waive the pretrial motions in this case, public policy is not offended by his decision to do so. Conse-

quently, we find, based on the entire record in this case, and pursuant to our fact-finding powers under Article 66, UCMJ, that the appellant made a knowing and intelligent decision, on advice of counsel, to waive those motions previously filed.

Further, in light of our consideration and disposition of the appellate issue concerning allegations of command influence, we are particularly loath to set aside a guilty plea that has been entered after a properly conducted providence hearing during which the military judge established that the accused believed he was guilty and that a factual basis for that belief existed. *Cf. Cooke*, 11 M.J. at 261 (Everett, C.J.) (accused ratified counsel's disclaimer of the existence of a pretrial agreement; mistaken belief concerning the existence of a pretrial agreement insufficient to set aside a provident plea). It is clear that an accused may decide not to litigate issues on advice of counsel, and not violate public policy, so long as it is established that the accused received a fair trial. *Cf. United States v. Mitchell*, 15 M.J. at 241. This is such a case.

■ This is *not* a case of an error committed by the military judge. The existence and all terms of any pretrial agreements are to be established at trial. *United States v. Muller*, 21 M.J. 205, 207 (C.M. A.1986). The military judge properly inquired and received assurances that no undisclosed agreements existed. In fact, he alertly questioned counsel concerning the withdrawal of motions. Only upon appeal did appellant allege that his counsel failed to advise him that he was required to waive the pretrial motions as a condition of a favorable limitation on confinement. Although we do not believe this assertion, assuming it were true, the Court of Mili-

---

6. Appellant was faced with numerous charges and the possibility of lengthy confinement. The hearing record reflects that defense counsel were not satisfied with an eighteen month limitation on confinement (as offered by the government), and followed the advice of more senior defense counsel to offer the waiver of motions as a means of moving the negotiations toward a sentence limitation of thirteen months confinement. We also note that this case was tried before the effective date of Manual for Courts-Martial, United States, 1984, Rules for Courts-Martial 705(c)(1)(B) (waiver of certain motions prohibited). *See Jones*, 23 M.J. at 308 n. 5.

tary Appeals has suggested in similar circumstances:

> This is a case of ... counsel failure.
>
> . . . . .
>
> If the breach of a counsel's obligation to his client or the court is of the magnitude to rise to inadequate representation, then in that event a new trial must be ordered. Anything short of a finding of inadequate representation must be tested for prejudice to see if the error materially affected the substantial rights of accused.

*United States v. Myles*, 7 M.J. at 133. Although we certainly do not condone counsel's less than candid conduct at trial, we find nothing that would indicate that his mendacity materially affected the substantial rights of appellant.[7] Art. 59(a), UCMJ, 10 U.S.C. § 859(a). *Cf. United States v. Pegg*, 16 M.J. 796 (C.G.C.M.R.1983) (decision to forego litigation of filed suppression motion and plead guilty based on an informal agreement with the convening authority was an entirely reasonable strategy and did not deprive accused of effective assistance of counsel), *petition denied*, 18 M.J. 28 (C.M.A.1984).

■ As appellant's post-trial allegations concerning command influence have been addressed in a fact-finding hearing, we believe that the tailored opinion of this court

responding to appellant's allegations of questionable pretrial negotiations has restored any possible loss of public confidence in the plea bargain process utilized in the case at bar. *Cf. Cruz*, 20 M.J. at 890; *United States v. Thomas*, 22 M.J. at 400 (remedial action by reviewing court should be in accordance with circumstances of individual case and in a manner consistent with legislative intent and prior case law). The full exposition of the facts at the limited hearing, as elicited from the parties involved in the pretrial negotiations, has failed to undermine the court's confidence that the appellant received a fair trial.

## III. Conclusion

■ The appellant asserts and the government appropriately concedes that Specification 8 of Charge IV (possession of hashish) is multiplicious for findings with Specification 9 of Charge IV (distribution of hashish), and that Specification 1 of Charge IV (use of hashish) is a lesser-included offense of the offense charged in Specification 1 of Charge III (conduct unbecoming an officer). We will take appropriate corrective action in our decretal paragraph. We note that at appellant's court-martial the military judge ruled, *inter alia*, that Specifications 8, 9, and 10 of Charge IV were multiplicious for sentencing pur-

---

7. However, counsel and staff judge advocates would be well advised to review Disciplinary Rule 1–102(A)(4) Misconduct, ABA *Model Code of Professional Responsibility*, before forming "gentlemen's agreements." As in this case, this informal practice can lead to misinforming an inquiring military judge that no separate agreements exist, and considerable appellate litigation. Such quibbling conduct speaks ill of the participants' integrity in those cases where such conduct was intended to mislead a trial judge, and may raise questions of competency in those cases where such conduct was inadvertent. See Army Regulation 27–10, Legal Services: Military Justice, para. 5–8, Professional Standards (25 Sept. 1986) concerning the applicability of the Model Code.

We also note that the regional defense counsel provided the government with an affidavit concerning a conversation he had with appellant's trial defense counsel regarding trial strategy. Apparently this statement had a twofold purpose: (1) to show that appellant was kept informed of defense counsel's proposals during plea bargaining, and (2) to reenforce defense counsel's representation at trial that the waiver of motions was a freely conceived and defense initiated product. While this affidavit occurred after trial and could not possibly prejudice appellant, there are obviously certain factors which should be considered regarding the practice of releasing such statements. Appellant has not alleged that his defense counsel was ineffective at trial. This matter is called to the attention of The Judge Advocate General so that a determination can be made whether any ethical or policy considerations exist warranting the issuance of guidance for future cases. Further, as another potentially analogous matter, the court also notes that the ABA Standing Committee on Ethics and Professional Responsibility has recently issued an Opinion (No. 87–353), regarding the ethically mandated response for lawyers to take when false evidence is offered to a court by a client. See 41 Crim.L.Rep. (BNA) 2131 (May 13, 1987).

poses. We have considered the other assignments of error and have determined them to be without merit.

The findings of guilty of Specifications 1 and 8 of Charge IV are set aside and those Specifications are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record, the court affirms the sentence.