UNITED STATES

v.

**Staff Sergeant James F. KYLE, FR 184–56–7572 United States Air Force.**

**ACM 28611.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 23 March 1990.

Decided 22 Feb. 1991.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair, Lieutenant Colonel Jeffrey R. Owens, Major Ronald G. Morgan, and Captain Richard W. Aldrich.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Major Brenda J. Hollis, and Major Paul H. Blackwell, Jr.

Before O'BRIEN, O'HAIR, PRATT and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

JAMES, Judge:

Appellant was convicted (on pleas of guilty) by a general court-martial of indecent acts and indecent liberties with a child and of making a sexually exploitative videotape of that child and other children. He was sentenced to be discharged from the service with a dishonorable discharge, to be confined for 9 years, to forfeit all pay and allowances, and to be reduced to E–1. The convening authority approved the sentence as adjudged except as to the forfeitures, which he reduced to $482.00 pay per month for 9 years.

The procedural posture of this case is unusual because we dispose of it before errors have been assigned. The record arrived incomplete. Appellate defense counsel asked this Court to order production of the missing documents, and we specified issues relating to their request. While preparing to deal with that defect, we noticed serious problems in the pretrial agreement and in the military judge's approach to determining the maximum punishment for one of the several specifications. Again we specified issues. We have received and considered briefs from both parties, and we now set aside the findings and sentence because the pleas of guilty were improvident. We first discuss the deficiency in the record and then turn to the pleas and maximum punishment.

### I. Incomplete Record

■ The deficiency of the record is not dispositive, but it is a serious matter and warrants description and comment. Some of the indecencies came to the attention of the child protective services of Denver, Colorado. The defense counsel asked before trial for a subpoena duces tecum to assure the presence at trial of a Mr. Mosher and his files on this case. He maintained the files in his capacity as a member of the Denver Department of Social Services. Trial counsel issued the subpoena, and Mr. Mosher appeared with his file. Mr. Mosher then stated the agency's policy that the file would be surrendered only in compliance with a subpoena, and then only to a judge, with the further request that the judge examine its contents *in camera*. The defense had no objection to that procedure, "Not as long as the defense would get anything relevant to the defense...." The military judge did so, and he held that none of the file's contents were discoverable. To this point the process described is correct.[1]

Unfortunately, the military judge did not comply with R.C.M. 701(g)(2), which required that he seal the documents and attach them to the record for appellate review. In consequence, the record is not "a complete record," 10 U.S.C. sec. 854(c)(1) (1988), Article 54(c)(1), UCMJ. Appellant was denied review of the denial of discovery, a fundamental right of military due process. 10 U.S.C. secs. 865–70 (1988), Articles 65–70, UCMJ; *United States v. Clay*, 1 U.S.C.M.A. 74, 1 C.M.R. 74, 77–78 (1951).

Accordingly, appellate defense counsel asked this Court to use its authority under the All Writs Act, 28 U.S.C. sec. 1651(a) (1988) to issue a subpoena to obtain the documents. Had we found it necessary to do so and had we found that we have that power, we, a federal, military court, would have found ourselves in the unconventional position of commanding compliance from a civilian agency of a city. That is a measure perhaps legal (we do not decide) but nonetheless not lightly to be undertaken and fraught with delicacies.

Furthermore, we would then have been tasking ourselves to correct the omission of the military judge at the risk of obtaining a file that might easily have been wholly different from the one he saw, but to us apparently the same. Thus, the method suggested by appellant was probably the wrong tool. A remand under *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), would likely have been a better method, probably the only one acceptable under the circumstances of this case.[2] Had the military judge been unable

---

1. We do not reach the merits of the military judge's denial of discovery.

2. We have not been offered a certificate of correction. *See generally* R.C.M. 1104(d). Appel-

to reconstruct exactly the contents of the original file, the omission from the record would have required a remedy.[3] That error no longer matters only because a different one governs disposition of this case.

We bring this example to the attention of military judges (and trial counsel and staff judge advocates, who share responsibility for making and preserving a record[4]) for its valuable lesson: A military judge must make a record of every significant *in camera* activity (other than his legal research) adequate to assure that his decisions remain reviewable on appeal. When a military judge examines information not accessible to both parties, that information must be sealed and attached to the record as an appellate exhibit. Considerable convenience will be accorded to the parties and reviewers if it is also inventoried, page by page, in the public part of the record.

## II. The Pretrial Agreement

While preparing to dispose of appellant's request for a subpoena, we examined the case on its merits; it would have been senseless to pursue correction of the omission in the record if some defect were apparent that would, alone, moot the question of the incomplete record. Unfortunately, we found such a defect. Appellant pleaded guilty as agreed in a pretrial agreement with the convening authority. That agreement suffered a variety of deficiencies that make the pleas improvident, principally that it rested on an incorrect perception of the maximum sentence.

Most of the agreement was proper, but the written agreement also purported to record the agreement of the parties that certain of the specifications were multiplicious for sentencing, as if their agreement would bind the military judge:

> ... the parties agree and stipulate that specification 1 and [2][5] ... are multiplicious for sentencing with specification [3] ..., and, therefore, the maximum sentence to confinement allowed by law is sixteen years as provided in Colorado Revised Statute[s]....

To further assure that result, counsel for the parties then entered into an unwritten agreement that (in summary) trial counsel would not pursue separateness for sentencing so long as the defense counsel would refrain from arguing that the maximum punishment for the case was less than agreed. Of course, the parties may not bind the military judge on a matter of law. However, multiplicity is in part a matter of fact, and a trial counsel can affect the outcome by his approach to the proof. The military judge did rule as the parties planned on multiplicity, in favor of appellant, and his ruling now governs our view of the case. That reduced the maximum confinement (as viewed by the parties at and before trial) from 30 years to 16 years. Thus, appellant cannot now complain, even though he believed inaccurately that he had a binding agreement on multiplicity: The trial played out as orchestrated.[6]

late defense counsel sought to reconstitute the file informally before asking our help, and a replica was sent to the military judge for review. Over 6 months after the trial, the military judge wrote to appellate defense counsel, presumably with as much certainty as he could muster, "Based on my recollection, the file appears to be a true and accurate copy of the file ... reviewed by me *in camera* ...." His honest equivocation made a certificate of correction impractical.

3. One appellate solution to the problem of incomplete records is to approve only so much of the sentence as is consistent with a summarized record, no more than confinement for 6 months and no punitive discharge. *See* R.C.M. 1103(b)(2)(B). *See, e.g., United States v. Harmon*, 29 M.J. 732 (A.F.C.M.R.1989).

4. Trial counsel is the guardian of the record, with a statutory duty to "prepare the record of

the proceedings," 10 U.S.C. sec. 838(a) (1988), Article 38(a), UCMJ. *See also* R.C.M. 502(d)(5), 1103(b) & (i). The military judge perpetuated his error by authenticating a record which did not include the special documents. *See* R.C.M. 1104. The staff judge advocate overlooked the military judge's mistake, despite his opportunity under R.C.M. 1104(e). Had anyone detected the error timely, the error might have been corrected through a post-trial session under R.C.M. 1102.

5. Some specifications were withdrawn, requiring that the remainder be redesignated.

6. *See generally United States v. Holland*, 1 M.J. 58 (C.M.A.1975), and decisions cited at note 8, below. Appellee has noted for us that the multiplicity provision can be read as binding the convening authority, requiring relief had the

That is, of course, much of the problem. A court-martial is not a puppet to be manipulated by the parties. It is a deliberative body whose duty is adjudication. Disputes should be brought to it for resolution, not bargained out among parties who then "rig" the results accordingly. The "deal" in this case that prevented defense counsel from arguing on how to determine the sentence violated two different prohibitions, R.C.M. 705(d)(3) ("All terms ... shall be written."), and Air Force Regulation 111–1, Military Justice Guide, paragraph 7–3.a. (30 September 1988) ("oral agreements are prohibited"),[7] and it violated a long and persistent tradition in the Air Force. Sub rosa, gentlemen's agreements are extremely dangerous. They have attracted entirely enough appellate attention[8] to assure us that our community knows fully that it should refrain from them.[9] However, the agreement alone does not require reversal. Instead, we must determine whether the accused was a knowing and intelligent party to it. To understand this aspect requires that one understand also the final major error in this case, discussed next.

### III. Maximum Punishment

■ Appellant was charged with three specifications, all violations of 10 U.S.C. sec. 934 (1988), Article 134, UCMJ, all alleging events in the same period. One of them, specification 3, alleged that appellant made sexually exploitative videotapes of children. This specification had been crafted to import a Colorado statute, Colo.Rev. Stat. 18–6–403 (1980), through the Assimilative Crimes Act, 18 U.S.C. sec. 13 (1988), and Article 134's last clause ("crimes and offenses not capital"), 10 U.S.C. sec. 934 (1988).

Such pleading is entirely proper, but it can create a new difficulty in determining a maximum punishment for the imported offense. R.C.M. 1003(c)(1) covers the problem. If the offense is listed in the Manual, the listed maximum punishment applies. If the offense is "included in or closely related" to a listed offense, the maximum punishment for the listed offense applies even though the two crimes are not the same. R.C.M. 1003(c)(1)(B)(i). If the offense is neither listed nor "included in or closely related" to a listed offense, then the maximum punishment under the United States Code applies. R.C.M. 1003(c)(1)(B)(ii). The parties here chose the wrong approach.

When the military judge determined the maximum sentence for the videotape specification, he relied on R.C.M. 1003(c)(1)(B)(ii) and imported the Colorado maximum confinement[10] as applicable to the assimilated specification. The parties did consider whether the videotaping might be "closely related" to an indecent act or indecent liberty. Defense counsel, bound by his unwritten deal, did not argue contrary to importing the Colorado maximum, even

---

military judge ruled otherwise. We are dubious: The parties to the agreement could have reached the same point much more directly by agreeing to conventional caps on the components of the sentence, but they did not choose to do so. Presumably they had some reason to deviate from the sound advice at A.F.R. 111–1, para. 7–3 (30 September 1988), but we decline to speculate what it might be.

**7.** *See generally, United States v. Phillips,* 24 M.J. 812 (A.F.C.M.R.1987).

**8.** *See, e.g., United States v. King,* 3 M.J. 458 (C.M.A.1977); *United States v. Elmore,* 1 M.J. 262 (C.M.A.1976); *United States v. Troglin,* 21 U.S.C.M.A. 183, 44 C.M.R. 237 (1972); *United States v. Avery,* 50 C.M.R. 827 (A.F.C.M.R.1975), aff'd, 23 U.S.C.M.A. 723 (1975); *United States v. Corriere,* 24 M.J. 701 (A.C.M.R.1987) (on further review); *United States v. Cain,* 5 M.J. 698 (N.C. M.R.1978); *United States v. Johnson,* 2 M.J. 541 (A.C.M.R.1976); *United States v. Schaffer,* 1 M.J. 583 (A.C.M.R.1973).

**9.** One of the reasons that they are dangerous, and one of the reasons that they are forbidden, is that they often contain terms that are void as against public policy. *See, e.g., United States v. Corriere,* 20 M.J. 905, 907 (A.C.M.R.1985), on further review at 24 M.J. 701 (A.C.M.R.1987), and the decisions collected there. Our disposition of this case makes it unnecessary for us to reach the question here.

**10.** Colo.Rev.Stat. 18–6–403(5), 18–1–-105 (1980). The pertinent federal civilian statute, 18 U.S.C. sec. 13(a) (1988), says, "... and subject to a like penalty" because it adopts state penal law for areas of exclusively federal jurisdiction. So the Colorado maximum would be incorporated into federal civilian law by 18 U.S.C. sec. 13 and into military law by R.C.M. 1001(c)(1)(B)(ii), *unless* videotaping is "included in or closely related" to an indecent liberty under Article 134.

though the maximum so determined included confinement for 16 years instead of the 7 years prescribed for indecent liberties under Manual for Courts–Martial, part IV, paragraph 87.e. Little helped by counsel, the military judge concluded that the videotaping was not "closely related to an Article 134 offense, specifically indecent liberties or indecent acts."

One may "import" the foreign punishment in this way *only* when the President has not already stated a punishment for the same offense or for one that includes it or is closely related to it. R.C.M. 1003(c)(1)(B)(i). Our system accords the primary responsibility for setting maximum punishments to the President,[11] not to state legislatures. 10 U.S.C. sec. 856 (1988), Article 56, UCMJ. That has, in settings like this, the commendable result that the maximum sentences will be uniform throughout the world, not varying according to the state whose statute has been "imported." Uniformity of application, while not a talisman, is assuredly a goal much to be sought in our worldwide, all-service system.

We conclude that the President's prescriptions for indecency offenses together cover the universe of indecencies. *See* Manual for Courts–Martial, part IV, paragraphs 87 through 90. One covers language regardless of listener, one covers exposure regardless of viewer, one covers other acts with persons who are not children, and one (paragraph 87) covers indecencies with children not involving language regardless whether the act includes a touching (in other words, everything else). To focus (as did the parties) on the photographic aspect is unrealistic.[12] An analysis of this sort does not depend on precedent or fine distinctions: When the President's rule relies on "closely related," the margin for error must lie, as the rule implies, in favor of applying the President's prescriptions. Indecent liberties with children describes the conduct in this case, and the President has prescribed for it a maximum of 7 years of confinement, greatly different from Colorado's 16 years.[13] At the very least, this error would require that we reassess or set aside the sentence. In the present setting, the law requires more.

## IV. Providency of Guilty Pleas

■ This error has a significant effect on the pleas and findings of guilty because

**11.** Except, of course, in those relatively few instances in which the Congress has done so.

**12.** The photographic precedents are limited to violations of Article 133, 10 U.S.C. § 933. *See, e.g., United States v. Shober,* 26 M.J. 501 (A.F.C.M.R.1986); *United States v. Breseman,* 21 M.J. 973 (C.G.C.M.R.1986), *affirmed,* 26 M.J. 398 (C.M.A.1988); *United States v. Williamson,* 19 M.J. 617 (A.C.M.R.1984), *rev. den.,* 21 M.J. 24 (C.M.A.1985); *United States v. Yeast,* 36 C.M.R. 890 (A.F.B.R.1966), *pet. denied,* 16 U.S.C.M.A. 655, 36 C.M.R. 541 (C.M.A.1966); *United States v. Ford,* 31 C.M.R. 353 (A.B.R.1961), *pet. denied,* 14 U.S.C.M.A. 684, 31 C.M.R. 314 (C.M.A.1963); *but see United States v. Rhodes,* 24 C.M.R. 776 (A.F.B.R.1957) (unclear, but photography appears to have been pleaded as an indecency under Art. 134). The parties considered *United States v. Orben,* 28 M.J. 172 (C.M.A.1989) (showing nude pictures to children is an indecent act under Article 134 and MCM pt. IV, para. 87); *United States v. Sadler,* 29 M.J. 370 (C.M.A.1990) (conviction for photographing nude minor reversed on instructional error); and *United States v. Reichenbach,* 29 M.J. 128 (C.M.A.1989) (preemption and other aspects of Article 134 in drug case). *See also United States v. Scott,* 21 M.J. 345 (C.M.A.1986) (showing pornographic magazines to children is an indecency); *United*

*States v. Harper,* 25 M.J. 895 (A.C.M.R.1988), *pet. denied,* 27 M.J. 418 (1988) (showing pornographic videotapes to children is an indecency); *United States v. Gordon,* 24 C.M.R. 443 (A.B.R. 1957) (showing). Though *Sadler* and *Reichenbach* were unhelpful, *Orben, Scott,* and *Harper* suggest the result we reach today: If showing pictures is an indecency, presumably the converse—taking pictures—is, too. Ironically, Colorado herself earlier regarded photography as an indecent liberty, *Cross v. People,* 122 Colo. 469, 223 P.2d 202 (1950) (en banc), and our ancestors took note of her view when defining what constitutes an indecency in *United States v. Hopp,* 4 C.M.R. (A.F.) 706, 717 (Judicial Council 1951), and later in *United States v. Werzinsky,* 10 C.M.R. 837, 839 (A.F.B.R.1953).

**13.** The Colorado statute reaches all videotaping for indecent purposes, not just that for commercial uses, but this case did not involve commercial use. The President's prescription of 7 years for such indecencies also does not depend on commercial aspects. Those who pursuant to Executive Order No. 12,473, 3 C.F.R. 201 (1985), annually review the Manual, through which the President publishes his prescriptions, may wish to consider the appropriateness of aggravation of punishment in such cases by proof of commercial intent or intent to circulate or publish.

they were entered in reliance on an obvious misapprehension of the maximum sentence that (if corrected) would certainly have affected the accused's choice to permit his counsel to refrain from arguing contrary to the 16–year maximum. *See generally, United States v. Poole,* 26 M.J. 272 (C.M.A. 1988) (demonstrating analysis); *United States v. Hunt,* 10 M.J. 222 (C.M.A.1981) ("whether the misapprehension of the maximum sentence affected the guilty plea, or whether that factor was insubstantial in his decision to plead"). A short review of the setting illustrates the problem:

| Spec.: | Offense: | Maximum Confinement | |
|---|---|---|---|
| | | Agreed | Actual |
| 1 | Indecent acts with A | 7 years | 7 years |
| 2 | Indecent liberties with A | 7 years | 7 years |
| 3 | Videotaping A et al. | 16 years | 7 years |
| | Total, considering all to be multiplicious for sentencing: | 16 years | 7 years |
| | Adjudged | | 9 years |
| | Approved by convening authority | | 9 years |

This single error more than doubled the maximum sentence to confinement, and the sentence adjudged and approved exceeded the lawful maximum when correctly calculated, allowing for the multiplicity found by the military judge.[14] It is inconceivable that appellant would have permitted his lawyer to agree to refrain from arguing the proper determination, had appellant realized its effect. As a result, the plea of guilty was improvident because it was made in mistaken reliance on an agreement which was itself incorrect and in reliance upon a substantial misapprehension of the maximum punishment.[15]

We are aware that we could seek to cure this much afflicted conviction by reassessment of sentence, but we cannot isolate the affected findings. We have considered the factors which guided such decisions in *Poole,* 26 M.J. 272, and in *United States v. Walls,* 9 M.J. 88 (C.M.A.1980). We conclude that the accused misapprehended the maximum punishment, that his misapprehension was substantial, and that it affected his choice of pleas and the negotiation with the convening authority. Accordingly, the findings and sentence are set aside. A rehearing may be ordered.

Chief Judge O'BRIEN and Senior Judge PRATT concur.

Senior Judge O'HAIR did not participate in this decision.

**14.** Had separateness been proved and found, the result in this case might have been different.

**15.** We do not reach the issue whether the agreement not to argue was a term in violation of R.C.M. 705(c)(1) or Air Force Regulation 111–1, paragraph 7–3 (30 September 1988). Neither do we examine the effectiveness of counsel. *See generally, United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Brothers,* 30 M.J. 289 (C.M.A.1990); *United States v. Barnard,* 32 M.J. 530 (A.F.C.M.R.1990).