UNITED STATES

v.

**William A. COOKE, 212 50 0295, Lance Corporal (E–3), U.S. Marine Corps.**

NCM 78 1509.

U. S. Navy Court of Military Review.

Sentence Adjudged 11 May 1978.

Decided 31 Dec. 1979.

CDR S. Gaeta, Jr., JAGC, USN, Appellate Defense Counsel.

CAPT Craig L. Kemmerer, USMCR, Appellate Government Counsel.

Before CEDARBURG, C. J., and FERRELL and DONOVAN, JJ.

FERRELL, Judge:

In accordance with his pleas of guilty, appellant was convicted by a special court-martial, judge alone, of a 4-day unauthorized absence,[1] larceny of sundry personal property valued at $885.00,[2] assault and battery,[3] and unlawful entry.[4] The trial counsel, following appellant's guilty plea inquiry, announced his intention not to proceed with the proof of a fifth charge of communicating a threat.[5] Appellant was sentenced to reduction to pay grade E–1, forfeiture of $150.00 per month for 5 months, confinement for 5 months, and a bad-conduct discharge. The convening and supervisory authorities approved that sentence. On 26 June 1978, the appellant's confinement was deferred until completion of appellate review.

Appellant assigns as error the following:

APPELLANT'S PLEAS OF GUILTY WERE IMPROVIDENT BECAUSE OF AN UNEXPOSED AGREEMENT AND UNDERSTANDING RELATING TO THE PLEAS OF GUILTY.

In support of this assignment, there is attached to appellant's brief an affidavit from appellant and a letter from the trial defense counsel. These are set out as follows:

AFFIDAVIT

I, WILLIAM A. COOKE, having been duly sworn in accordance with the law, do depose and say:

---

1.  Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886.

2.  Article 121, UCMJ, 10 U.S.C. § 921.

3.  Article 128, UCMJ, 10 U.S.C. § 928.

4.  Article 130, UCMJ, 10 U.S.C. § 930.

5.  Article 134, UCMJ, 10 U.S.C. § 934.

(a) that my letter dated "3 Jan 1979", which text is set forth in its entirety with no deletions, additions or corrections, is true to the best of my knowledge and belief, and I hereby confirm the truthfulness of the facts therein under solemn oath.

3 Jan. 1979

Sir,

When I discussed my case with my defense Counsel, I was told that it would better for me to plead guilty to the charges and attempt to make a pre-trial agreement with my Commanding officer, because of a statement given by me to the San Diego Police when I was arrested because it was going to be used by the trial counsel against me. He said that with that statement I would be found guilty anyway and probably be given a more severe sentence.

The agreement made between my Commanding Officer, Major [H] and myself was that in return for my guilty plea all of confinement time in excess of thirty days would be dismissed and in thirty days I would be released from confinement and placed on appellate leave. This was a verbal agreement because my C.O. had a meeting to attend and could not remain long enough for the pre-trial agreement papers to be typed and signed. The agreement was made on 11 May 1978 with my defense counsel as a witness. The trial counsel also knew of this agreement. After explaining to me that the agreement could not be mentioned in the trial because the judge did not know about it. I informed my defense counsel that I would not plead guilty to charge V violation of Article 134 he discussed it with the trial counsel and later told me that the charge would be dismissed because of my plea to the other four charges. This all I can recall at this time if I do remember anything else I will contact you.

Sincerely,

William A. Cooke

/s/_____

WILLIAM A. COOKE

UNITED STATES MARINE CORPS

Legal Services Support Office

3d Force Service Support Group

Fleet Marine Force, Pacific

FPO, San Francisco 96602

17A:KJN:rbg
5800
APR 30 1979

From: Trial Defense Counsel
To: Appellate Defense Counsel
Subj: *U.S. v. COOKE*
Ref: My ltr dtd 17 Feb 79

1. Having now had an opportunity to review my case file and reflect upon the pretrial and trial events of this case, it is my recollection that COOKE's version of what occurred is basically correct.

2. I had been negotiating with the convening authority for a pretrial agreement whereby COOKE's post-trial request for excess leave to await appellate review would be approved in return for appropriate pleas of guilty. On the morning of trial I had occasion to again see and speak with the convening authority in my office and we again discussed the matter. The convening authority advised me that he would, in any event, look favorably on such a request for excess leave and that he would be willing to enter into a pretrial agreement to that effect. Unfortunately, the convening authority was then immediately leaving for a conference and would not be available to effect a pretrial agreement until some days hence. COOKE was present throughout and privy to our entire conversation in this regard.

3. At that point in time COOKE had been in pretrial confinement for 45 days and desperately wanted to go to trial that day and be done with it. We had discussed at length all viable defenses and the great possibility that he would be convicted. COOKE had, of course, authorized my overtures to the convening authority regarding a pretrial agreement and it had been decided that he would

plead guilty to most of the alleged offenses regardless of the outcome of those negotiations. I advised COOKE that, based upon my experience with this particular convening authority, I believed any request for excess leave would receive favorable attention with or without a pretrial agreement. At the time of trial it was my understanding that we had neither a pretrial agreement nor a pretrial understanding in the nature of a pretrial agreement, and I thought that COOKE understood this as well.

4. I feel confident that I explained the providency and Care inquiry to COOKE and that the military judge would ask whether there existed any pretrial agreements or understandings which induced him to plead guilty. I am equally certain that I emphasized my opinion that the convening authority was not legally bound by our prior discussions with regard to any post-trial action. Apparently COOKE did not truly understand the situation despite my explanations.

5. My advice to COOKE concerning the military judge's standard inquiries was the same as I customarily give in guilty plea cases, which does not, of course, include advising the client to withhold information concerning any pretrial agreements or understandings.

6. There was no express agreement between myself and the trial counsel with respect to withdrawing Charge V. As I previously indicated, it was not unusual for this particular trial counsel to choose not to proceed on such a charge, given guilty pleas as to other substantial offenses. I do recall approaching the trial counsel prior to trial and informing him of the results of my discussion with the convening authority and that, although no pretrial agreement had been effected, we were going to proceed to trial that day. I also indicated that pleas of guilty would be entered as to all charges save Charge V. The trial counsel, if I recall correctly, indicated that he did not believe any imposition of sentence would be ultimately enhanced by proving Charge V and that he would probably not do so.

This was the extent of any understanding between myself and the trial counsel. COOKE was, of course, advised by me of my expectations following that discussion.

7. I trust that this will be of assistance to you. Please do not hesitate to call on me if I may be of future benefit to COOKE's cause.

/s/ _____
Capt. [N], USMC
Defense Counsel

The portion of the military judge's inquiry relative to this issue is as follows:

Q. Lance Corporal COOKE, have you had ample time and opportunity to discuss your case with your defense counsel?

A. I have, Your Honor.

Q. Have you consulted fully with your defense counsel and received the full benefit of his advice?

A. Yes, sir, I have.

Q. Are you satisfied that your counsel's advice is to your own best interest?

A. Yes, sir, I am.

Q. All right. Are you pleading guilty voluntarily and of your own free will?

A. Yes, sir, I am.

Q. Has anyone made any threat or tried in any other way to force you to plead guilty?

A. No, sir, they have not.

MJ: Is there a pretrial agreement in connection with the plea?

DC: There is not, Your Honor.

Q. All Right. Lance Corporal COOKE, are you pleading guilty because you believe in your own mind that you are guilty?

A. Yes, sir, I am.

Q. Do you understand that even though you feel you are guilty, you do have this legal and moral right to plead not guilty and place the burden on the government of proving your guilt by legal and competent evidence beyond a reasonable doubt?

A. Yes, sir, I understand.

MJ: All right. Captain [N], have you explained to the accused and does he un-

derstand his rights to introduce evidence and to testify or to remain silent both on the merits and in extenuation and mitigation?

DC: Your Honor, I have explained them to him and I believe he understands.

Q. All right. Lance Corporal COOKE, do you have any questions at this point concerning the plea of guilty that you've entered here today?

A. No, sir.

Q. Take a moment now and consult once more with your defense counsel and then advise me whether you understand everything we've discussed and whether you still wish to plead guilty.

A. Your Honor, I still desire to plead guilty.

Q. All right. Do you understand everything we've discussed so far?

A. Yes, sir, I do.

(R.27–28).

Utilizing our fact finding powers authorized by Article 66, UCMJ, 10 U.S.C. § 866, we find that no pretrial agreement existed in this case. The record of trial shows by a thorough, clear, and complete inquiry that no pretrial agreement existed. A close study of that portion of the record reveals that the military judge, while questioning appellant in regard to his guilty pleas, posed the question, "Is there a pretrial agreement in connection with the plea?" The defense counsel at this point stated, "There is not, Your Honor." The military judge immediately directed further questions to appellant concerning his pleas; and directed him to consult with his counsel, and then asked him, "Do you understand everything we've discussed so far?" Appellant replied, "Yes, sir, I do."

The trial defense counsel states it was his understanding that, "we had neither a pretrial agreement nor a pretrial understanding in the nature of a pretrial agreement." We do not find appellant's affida-

vit claiming he had a pretrial agreement to be convincing or even internally consistent. Appellant tells us that he had an agreement with the convening authority to plead guilty in exchange for a limit on the period of confinement. At the time of this alleged agreement the appellant had five charges pending against him; when it came time to plead he refused to plead guilty to Charge V. We do not believe appellant entered into an agreement with the convening authority to plead guilty to five pending charges in exchange for a confinement limitation and then that very same day refused to plead as he had agreed.[6] Charge V was not withdrawn by either the convening authority or the trial counsel but was disposed of by the military judge in a finding of not guilty after the Government offered no evidence.

The record of trial leaves no doubt but that the defense counsel told the military judge that there was no pretrial agreement. Immediately following this question appellant had the opportunity to counter this statement if he thought he had an agreement; appellant, however, made no mention of any such agreement and assured the military judge that he understood everything that had been discussed.

The Government counsel, in his brief, contends in the alternative that even if an agreement did exist the case should not be reversed, citing *United States v. Myles,* 7 M.J. 132 (C.M.A.1979). We agree, even though there are some differences in the facts of this case and *Myles.* In *Myles,* the Court of Military Appeals, by implication, accepted the existence of an agreement while in the case *sub judice* a difference of opinion exists even between appellant and his trial defense counsel as to whether or not an agreement existed. In *Myles,* both counsel failed to disclose the existence of the agreement. The trial counsel in this case made no such assertion;[7]

---

**6.** If we accept appellant's contention that there was a pretrial agreement it appears appellant by his not guilty plea to Charge V nullified the agreement.

**7.** As we read the cases, the military judge is not required to ask the trial counsel about the

existence of an agreement. Inquiries to the trial counsel concern the interpretation of the terms of the agreement after it has been presented by the accused at the trial level.

indeed, he could not have inasmuch as he was not present at the meeting between appellant, the defense counsel, and the convening authority, he had nothing in writing, and the defense counsel had said there was no such agreement.

We agree with Chief Judge Fletcher in *Myles* when he says, "the inquiry is a two edged sword; one side is to protect the defendant and the other is to protect the Government against post-trial attacks on valid guilty pleas." *Id.* at 133. The military judge's thorough inquiry at the trial fully protected the appellant and the Government is entitled to no less by this Court.

Accordingly, the findings and sentence as approved on review below are affirmed.

Chief Judge CEDARBURG concurs.

DONOVAN, Judge (dissenting):

I find the plea improvident and dissent. In order to avoid misunderstandings arising from guilty pleas prompted by express or implied pretrial agreements, this Court suggested an inquiry format in *United States v. Williamson*, 4 M.J. 708 (N.C.M.R.1977). If military judges followed that procedure, it would satisfy the standards on pretrial agreement inquiries set by the Court of Military Appeals in *United States v. Green*, 1 M.J. 453 (C.M.A.1976), *United States v. Elmore*, 1 M.J. 262 (C.M.A.1976), and *United ed States v. King*, 3 M.J. 458 (C.M.A.1977). Its use here could have uncovered the misunderstanding which prompts this appeal.

In this case, the military judge failed to ask the accused if he believed that he had a pretrial agreement with the convening authority. This question is the first of seven matters which *Williamson, supra* at 710, addressed in the suggested procedure. By affidavit, appellant now swears that not only did there exist a verbal agreement among himself, his defense counsel and the convening authority as to the sentence conditions, but that his defense counsel had arranged it, albeit the agreement was never committed to writing because of the con-

vening authority's busy schedule and appellant's desire to go to trial. The Government contends that the convening authority merely signalled a readiness to enter into a future agreement without consummating one. I resolve the doubt favorably to appellant. The majority perceive inconsistency on appellant's part as to the disposition of Charge V. Examination of both affidavits reveals, however, that the appellant understood non-pursuit of Charge V to have been a fine-tuning of the unwritten agreement, negotiated just prior to trial, and that his counsel "advised" him of his expectations in that regard. Certainly the convening authority's personal visit to the defense counsel's office on the morning of trial was so unusual an event as to lead an accused to believe in the existence of an unwritten agreement.

The convening authority approved appellant's sentence without modification. The supervisory authority on 1 September 1978 took similar action, noting that the "sentence to confinement at hard labor was deferred effective upon commencement of excess leave on 26 June 1978 and until completion of appellate review unless sooner rescinded." The original of appellant's form request entitled "Application for deferment of sentence to confinement in connection with appellate leave" is attached to the record of trial and is dated 19 May 1978. It was endorsed, as approved, by his company commander, on 6 June 1978. Sentence was adjudged 11 May. Since deferment was effective 26 June, appellant served some 46 days of post-trial confinement. The verbal agreement appellant claims existed was that "in return for my guilty plea all of confinement time in excess of thirty days would be dismissed and in thirty days I would be released from confinement and placed on appellate leave." Appellant's willingness to go to trial without a formal pretrial agreement seems to have cost him 16 days further confinement. Whatever the delay in obtaining a written pretrial agreement, appellant would have been in continued pretrial confinement. Certainly

preparation of the agreement would have required one day at a minimum. Accordingly, appellant believes his unexposed pre-trial agreement caused him to suffer 15 (or less) days of added post-trial confinement than he had been led to expect.

The pleas seem clearly provident on the gravamen of the offenses; improvidency arises solely as to the sentencing conditions which prompted the pleas. Since such agreements are indivisible, however, I reluctantly conclude that the plea was improvident, the judge's inquiry having been inadequate, substantially contributing to the appellant's claim of injustice which we now face.

This case is doubly distinguishable from *United States v. Myles*, 7 M.J. 132 (C.M.A. 1979): this appellant complains of noncompliance with the *sub rosa* terms and this judge's inquiry as to the existence of any agreement was not made to both counsel but to the defense counsel alone without any confirming question to the appellant himself. I would set aside the findings and sentence and order a rehearing.