**UNITED STATES, Appellee,**

v.

**William A. COOKE, Lance Corporal U. S. Marine Corps, Appellant.**

No. 38,581.
NCM 78 1509.

U. S. Court of Military Appeals.

July 20, 1981.

Appellant: *Lieutenant Commander I. D. Warden, Jr.,* JAGC, USN (argued); *Commander S. Gaeta, Jr.,* JAGC, USN, *Lieutenant Commander Daniel F. Stella,* JAGC, USNR–R (on brief); *Lieutenant Commander Lawrence W. Muschamp,* JAGC, USN.

Appellee: *Captain Charles W. Dorman,* USMC (argued); *Commander T. C. Watson, Jr.,* JAGC, USN, *Captain Craig L. Kemmerer,* USMCR (on brief); *Lieutenant Colonel David A. Higley,* USMC.

## Opinion of the Court

EVERETT, Chief Judge:

Appellant was tried on May 5 and 11, 1978, by special court-martial, with judge alone, on charges of unauthorized absence, larceny, assault and battery, housebreaking, and communicating a threat, in violation of Articles 86, 121, 128, 130 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 921, 978, 930 and 934, respectively. He pleaded guilty to the first four charges[1] but not guilty to the threat offense. After a providence inquiry by the military judge and acceptance of the guilty pleas, trial counsel declined to proceed with evidence concerning the charge to which appellant had pleaded not guilty. The judge entered findings pursuant to appellant's pleas and sentenced Cooke to a bad-conduct discharge, confinement for 5 months, forfeiture of $150 pay per month for 5 months, and reduction to the lowest pay grade.

On May 19, 1978, appellant and his defense counsel requested that this adjudged "sentence to confinement . . . be deferred effective upon commencement of excess leave until completion of appellate review." On June 5, 1978, the convening authority approved the sentence; and the next day he approved the request for deferment of confinement "effective upon commencement of excess leave until completion of appellate review unless sooner rescinded." The supervisory authority approved the sentence; and in his action he noted that "[t]he sentence to confinement at hard labor was deterred effective upon commencement of excess leave on 26 June 1978 and until completion of appellate review unless sooner rescinded." Furthermore, he deferred the application of forfeitures of pay "effective upon commencement of excess leave on 26 June 1978 and until completion of appellate review unless sooner rescinded."

The United States Navy Court of Military Review affirmed the approved findings and sentence (Donovan, J., dissenting). 8 M.J. 679 (1979). We, in turn, granted (9 M.J. 52) the appellant's petition for review to consider the issue which divided the court below, namely:

WHETHER APPELLANT'S GUILTY PLEAS MUST BE DEEMED IMPROVIDENT, AND A REHEARING ORDERED, BECAUSE THE MILITARY JUDGE ACCEPTED THE PLEAS WITHOUT INQUIRING OF THE APPELLANT AS TO THE EXISTENCE OF PRETRIAL AGREEMENTS OR UNDERSTANDINGS, AND APPELLANT HAS MADE COLORABLE CLAIMS ON APPEAL THAT HIS PLEAS WERE BASED UPON A PRETRIAL AGREEMENT OR UNDERSTANDING WHICH WAS UNEXPOSED AT TRIAL AND UNHONORED BY THE CONVENING AUTHORITY,

[1]. The plea to the charge of larceny was with exceptions and substitutions as to the value of the property stolen.

AND WHICH IS NOW INCAPABLE OF
BEING HONORED.

## I

During the providence hearing the military judge asked, "Is there a pretrial agreement in connection with the plea?" and the defense counsel responded, "There is not, Your Honor." Shortly thereafter, appellant answered affirmatively the question, "Do you understand everything we've discussed so far?"

More than seven months after trial, the issue of providence was raised initially by this letter dated January 3, 1979, from appellant to his appellate defense counsel:

Sir,

When I discussed my case with my Defense Counsel, I was told that it would be better for me to plead guilty to the charges and attempt to make a pre-trial agreement with my Commanding officer, because of a statement given by me to the San Diego Police when I was arrested because it was going to be used by the trial counsel against me. He said that with that statement I would be found guilty anyway and probably be given a more severe sentence.

The agreement made between my Commanding Officer, Major Howo and myself was that in return for my guilty plea all of confinement time in excess of thirty days would be dismissed and in thirty days I would be released from confinement and placed on appellate leave. This was a verbal agreement because my C.O. had a meeting to attend and could not remain long enough for the pre-trial agreement papers to be typed and signed. The agreement was made on 11 May 1978 with my defense counsel as a witness. The trial counsel also knew of this agreement. After explaining to me that the agreement could not be mentioned in the trial because the judge did not know about it. I informed my defense counsel that I would not plead guilty to Charge V violation of Article 134 he discussed it with the trial counsel and later told me that the charge would be dismissed because of my plea to the other four

charges. This all I can recall at this time if I do remember anything else I will contact you.

Sincerely,
s/ William A. Cooke

Also before the Court of Military Review was a memorandum from trial defense counsel to appellate defense counsel, which, in material part, stated:

1. Having now had an opportunity to review my case file and reflect upon the pretrial and trial events of this case, it is my recollection that COOKE'S version of what occurred is basically correct.

2. I had been negotiating with the convening authority for a pretrial agreement whereby COOKE's post-trial request for excess leave to await appellate review would be approved in return for appropriate pleas of guilty. On the morning of trial I had occasion to again see and speak with the convening authority in my office and we again discussed the matter. The convening authority advised me that he would, in any event, look favorably on such a request for excess leave and that he would be willing to enter into a pretrial agreement to that effect. Unfortunately, the convening authority was then immediately leaving for a conference and would not be available to effect a pretrial agreement until some days hence. COOKE was present throughout and privy to our entire conversation in this regard.

3. At that point in time COOKE had been in pretrial confinement for 45 days and desperately wanted to go to trial that day and be done with it. We had discussed at length all viable defenses and the great probability that he would be convicted. COOKE had, of course, authorized my overtures to the convening authority regarding a pretrial agreement and it had been decided that he would plead guilty to most of the alleged offenses regardless of the outcome of those negotiations. I advised COOKE that, based upon my experience with this par-

ticular convening authority, I believed any request for excess leave would receive favorable attention with or without a pretrial agreement. At the time of trial it was my understanding that we had neither a pretrial agreement nor a pretrial understanding in the nature of a pretrial agreement, and I thought that COOKE understood this as well.

4. I feel confident that I explained the providency and Care inquiry to COOKE and that the military judge would ask whether there existed any pretrial agreements or understandings which induced him to plead guilty. I am equally certain that I emphasized my opinion that the convening authority was not legally bound by our prior discussions with regard to any posttrial action. Apparently COOKE did not truly understand the situation despite my explanations.

5. My advice to COOKE concerning the military judge's standard inquiries was the same as I customarily give in guilty plea cases, which does not, of course, include advising the client to withhold information concerning any pretrial agreements or understandings.

6. There was no express agreement between myself and the trial counsel with respect to withdrawing Charge V. As I previously indicated, it was not unusual for this particular trial counsel to choose not to proceed on such a charge, given guilty pleas as to other substantial offenses. I do recall approaching the trial counsel prior to trial and informing him of the results of my discussion with the convening authority and that, although no pretrial agreement had been effected, we were going to proceed to trial that day. I also indicated that pleas of guilty would be entered as to all charges save Charge V. The trial counsel, if I recall correctly, indicated that he did not believe any imposition of sentence would be ultimately enhanced by proving Charge V and that he would probably not do so. This was the extent of any understanding

between myself and the trial counsel. COOKE was, of course, advised by me of my expectations following that discussion.

## II

█ In its opinion the Court of Military Review concluded, "Utilizing our fact finding powers authorized by Article 66, UCMJ, 10 U.S.C. § 866, we find that no pretrial agreement existed in this case." 8 M.J. at 682. We perceive no basis for ruling that, as a matter of law, the Court below erred in the exercise of its fact finding power. Indeed, the record of trial is quite consistent with the inference that, even though a pretrial agreement was discussed, no agreement had been reached because of the appellant's insistence that he was not guilty of the charged communication of a threat, and on the basis of his counsel's prediction of the probable outcome, appellant determined to enter a plea of guilty to the other four charges even without a pretrial agreement. Of course, the tactics chosen by the defense counsel proved effective since the Government did not proceed with presentation of evidence on the controverted charge, and appellant received sentence relief approximating that which had been discussed during the inconclusive negotiations about a pretrial agreement.

█ In military practice, pretrial agreements are negotiated between the accused and the convening authority, so that it is conceivable—although highly improbable—that a trial counsel might not be aware of a pretrial agreement. Of course, if he is aware of any pretrial agreement, trial counsel, like defense counsel, has the obligation to disclose its existence to the military judge.[2] Cf. United States v. Hinton, 10 M.J. 136 (C.M.A.1981); United States v. Passini, 10 M.J. 108 (C.M.A.1980). However, even if both trial counsel and defense counsel lack candor and conceal the existence of a pretrial agreement, the provi-

---

2. The review of the staff judge advocate states that there was no pretrial agreement. Of course, this officer also would be under a duty

not to suppress information concerning existence of a pretrial agreement.

dence of a guilty plea is not automatically vitiated. Their failure to disclose in no way imputes error to the judge. *United States v. Myles*, 7 M.J. 132 (C.M.A.1979).

In many cases, we have emphasized that it is important for a military judge to address certain questions directly to an accused who offers a guilty plea. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). However, this obligation is not violated by a judge's failure to obtain a personal assurance from an accused that there are no pretrial agreements after his attorney has already denied their existence. To this extent, at least, the judge can rely on sworn counsel to perform their duty of disclosing such matters to the court. *Cf. United States v. Passini, supra.*

The argument is also made that, even if there was no pretrial agreement, appellant is entitled to have his guilty pleas set aside because he believed in good faith that such an agreement existed. We have two replies to this contention. In the first place, if an accused enters a guilty plea in the erroneous belief that a pretrial agreement exists whereunder the convening authority has obligated himself to grant certain relief, then the nonexistence of the agreement does not negate the plea's voluntariness if the convening authority grants the same relief for which the accused thought he had contracted.[3] In the case at bar, we have virtually this situation since there was only a difference of sixteen days between the time appellant spent in post-trial confinement and that which he foresaw would be required under the supposed pretrial agreement. Moreover, in connection with the appellant's release from confinement, the Government employed the device of "appellate leave," which, as appears

from his letter of January 3, 1979, Cooke had anticipated would be utilized. Indeed, we infer that defense counsel gave Cooke an estimate that it would probably require 30 days to complete the necessary paperwork, and Cooke now complains because 16 additional days passed before this was completed.[4]

Secondly, appellant was present in open court when his attorney represented to the judge that no agreement existed, and appellant in no way dissented from this statement. Under these circumstances, his conduct ratified his counsel's disclaimer of the existence of a pretrial agreement. Moreover, at that point, any mistaken belief still entertained by Cooke that a pretrial agreement existed can only be characterized as unreasonable. However, whether or not reasonable, a mistaken belief that a pretrial agreement exists is insufficient to justify setting aside a guilty plea that, as here, has been entered after a properly conducted providence hearing, which established that the accused believed he was guilty and that there was a "factual basis" for that belief.[5]

A final argument in Cooke's behalf is that, even if, as determined by the Court of Military Review, no pretrial agreement existed, he is nonetheless entitled to specific performance of the terms of the imagined "agreement." Since he cannot be restored the sixteen days of time he was confined after trial in excess of the confinement which he would have been required to serve under the "agreement," appellant should then receive a compensating sentence reduction—such as remission of the punitive discharge. Although, under some circumstances, the Government may be required by a court to comply with the terms of an

3. Thus, this Court has consistently denied review of cases which raised the issue of whether a post-trial misconduct clause was invalid but in which the clause had not been invoked by the convening authority. Our rationale was that the accused received what he anticipated, regardless of the validity of the clause.

4. There is no indication in the record or allied papers that the Government acted in a dilatory

manner in preparing the record of trial, acting on the request for deferment, or placing appellant on appellate leave.

5. An accused's mistaken belief may be relevant to other grounds for setting aside a guilty plea—such as incompetence of defense counsel or overreaching by the prosecution.

"agreement' to which it never committed itself, *cf. Virgin Islands v. Scotland*, 614 F.2d 360 (3rd Cir. 1980); *Cooper v. United States*, 594 F.2d 12 (4th Cir. 1979), such cases involve more extensive activity on the government's part and greater detrimental reliance by an accused than are present in the case at hand.

### III

Appellant has not demonstrated that he is entitled either to the vacating of his pleas of guilty or to any other relief. Accordingly, the decision of the United States Navy Court of Military Review is affirmed.

Judge COOK concurs.

FLETCHER, Judge (dissenting):

I find the reasoning posited by Judge Donovan, the dissenting judge in *United States v. Cooke*, 8 M.J. 679, 683 (N.C.M.R. 1979), to be persuasive. It states the law as I perceive it; it retains a structured procedure for satisfying the standards on pretrial agreement inquiries and it adds to, not subtracts from, the stability of the law.