UNITED STATES, Appellee,

v.

Private First Class Steven STRINGER, 418–98–7741, United States Army, Appellant.

ACMR 9001814.

U.S. Army Court of Military Review.

31 Jan. 1992.

For Appellant: Captain Alan M. Boyd, JAGC, Captain Robin N. Swope, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, Captain Steven M. Walters, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

In accordance with his pleas, the appellant was convicted by a military judge sitting as a special court-martial of attempting to violate a lawful general regulation, two specifications of violating a lawful general regulation, resisting apprehension, two specifications of assaulting military policemen, and fraudulently using and possessing a military identification card, in violation of Articles 80, 92, 95, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 892, 895, 928, and 934 (1982), re-

spectively. He was sentenced to a bad-conduct discharge, confinement for four months, forfeiture of $200.00 pay per month for four months, and reduction to Private E1. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provides for a bad-conduct discharge, confinement for three months, forfeiture of $200.00 pay per month for three months, and reduction to Private E1.

The appellant became involved in black-marketing with Korean nationals by which they planned to divert merchandise from the post exchange to the local economy in contravention of Army regulations. In accordance with their scheme, the appellant purchased a refrigerator and washing machine from the exchange utilizing a false identification card and false letter of authorization supplied by his Korean cohorts. As he was attempting to take the items off post, the gate guard called the appellant's unit and determined that the letter of authorization was not authentic. The guard's action was consistent with command policy to enforce anti-blackmarketing regulations. When the appellant was asked to produce his identification card, he assaulted the gate guard and fled on foot. After a short chase, the gate guard apprehended the appellant. The items were seized and the appellant confessed to the regulatory and disorderly conduct offenses.

■ During a pretrial hearing, the appellant moved to suppress all incriminating evidence on grounds that the actions by the security guard were tantamount to an illegal seizure in violation of the fourth amendment to the Constitution. The military judge denied the motion, citing as authority *United States v. Alleyne*, 13 M.J. 331 (C.M.A.1982), *United States v. Harris*, 5 M.J. 44 (C.M.A.1978), and Manual for Courts-Martial, United States, 1984, Mil. R.Evid. 314(c) [hereinafter Mil.R.Evid.]. Thereafter, the appellant entered conditional pleas of guilty to the offenses pursuant to Mil.R.Evid. 910(a)(2), thus preserving his right to appeal to this court the military judge's denial of his motion. We have reviewed the military judge's ruling denying

the appellant's suppression motion and hold that it is correct in law and fact.

Military Rule of Evidence 314(c) provides in relevant part:

[A] commander of a military installation, enclave, or aircraft on foreign soil, or in foreign or international airspace, or a United States vessel in foreign or international waters, may authorize appropriate personnel to search persons or the property of such persons upon entry to or exit from the installation, enclave, aircraft, or vessel to ensure the security, military fitness, or good order and discipline of the command.... A search made for the primary purpose of obtaining evidence for use in a trial by court-martial or other disciplinary proceeding is not authorized by this subdivision.

■ The rule comports with decisional law holding that gate searches at military installations located on foreign soil are analogous to customs or border searches, which have been held by the Supreme Court to be "reasonable simply by virtue of the fact that they occur at the border." *Alleyne*, 13 M.J. at 333–34, *citing United States v. Ramsey*, 431 U.S. 606, 616, 97 S.Ct. 1972, 1978, 52 L.Ed.2d 617 (1977) and *United States v. Rivera*, 4 M.J. 215 (C.M.A. 1978). The underlying justifications for border searches include the necessity of a nation to guard its borders from potential law breakers and the lesser expectation of privacy on the part of individuals wishing to pass through. Those justifications are similarly applicable to gate searches by military authorities as they are necessary to protect military property and threats to military readiness, effectiveness, and discipline from outsiders; and there is a diminished expectation against intrusion on the part of individuals attempting to enter or exit the installation. Gate guards, like border guards, are allowed much discretion in conducting gate searches. Unless the search is so offensive as to offend common sensibilities, it will not be deemed unreasonable. *See Alleyne*, 13 M.J. at 336, n. 5.

Our examination of the record leads us to the conclusion that the actions of the gate guard in detaining and attempting to authenticate the appellant's credentials as he attempted to bring exchange merchandise through the gate were permissible and not unreasonable.

■ The appellant also asserts that, in negotiating the pretrial agreement, he was penalized for failing to waive his right to appellate review of the suppression motion in contravention of Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 705(c)(1)(B) and 1110(c) [hereinafter R.C.M.].[1] In support of his assertion, he has submitted an affidavit from his trial defense counsel which avers that the trial counsel "offered to agree to a pretrial agreement whereby the accused would only serve two months confinement if he waived appellate review [but] if the accused did not waive his appellate rights, he would only agree to a pretrial agreement whereby the accused would serve only three months." The defense counsel apprised the appellant of the trial counsel's offer and he elected to plead guilty conditionally in exchange for three months confinement. The government has filed an affidavit from the trial counsel who unequivocally denies the defense's allegation. Two other affidavits, from the Chief of Military Justice and the assistant trial counsel, purport to support the trial counsel's denial. However, they amount to no more than expressions of lack of recall of the circumstances surrounding the negotiations.

Were we to believe the defense counsel's affidavit, we could conclude that the appellant was penalized for exercising his right to appeal the judge's ruling and grant him the remedy of non-enforcement of the relevant provision in the agreement. R.C.M. 705(c)(1)(B). *See also United States v. Mills*, 12 M.J. 1 (C.M.A.1981); *United States v. Cummings*, 35 C.M.R. 174 (C.M.A.1968); *United States v. Darring*, 26 C.M.R. 431 (C.M.A.1958); *United States*

---

1. R.C.M. 705(c)(1)(B) provides that a "term or condition in a pretrial agreement shall not be enforced if it deprives the accused of: ... the complete and effective exercise of post-trial and appellate rights." R.C.M. 1110(c) provides, "No person may compel, coerce, or induce an accused by force, promises of clemency, or otherwise to waive or withdraw appellate review."

**670**

v. *Ponds,* 3 C.M.R. 119 (C.M.A.1952). On the other hand, were we to believe the trial counsel's affidavit, we could find that the appellant did not suffer for asserting his right to appeal. Where both affidavits are equally credible, normally we would be constrained to remand the matter to a convening authority for a limited hearing pursuant to *United States v. Dubay,* 37 C.M.R. 411 (C.M.A.1967), where the factual conflict between them could be resolved. In this case, both affidavits are equally credible. However, as a matter of sound judicial policy, we decline to order a limited hearing.

 During the military judge's inquiry into the providence of the pleas, the appellant stated he was pleading guilty voluntarily and of his own free will. When asked if he had been forced or coerced into entering the pretrial agreement, he responded in the negative. Furthermore, he admitted that he was satisfied with the advice of his defense counsel with respect to the agreement. In submitting matters to the convening authority pursuant to R.C.M. 1105 and 1106, the appellant did not complain that he was coerced into pleading guilty. Finally, during this appeal, the appellant has neither filed an affidavit nor presented any other information alleging that he was coerced into entering into the pretrial agreement. It is noteworthy, too, that, until this appeal was filed, the appellant's trial defense counsel did not assert that the government improperly coerced his client during the plea bargaining process. When a military judge makes a thorough inquiry into the providence of the appellant's plea and obtains the appellant's and defense counsel's assurances that a facially proper pretrial agreement was voluntary and uncoerced, their post-trial assertions to the contrary will not be countenanced by this court. Just as counsel and the accused have the obligation to disclose *sub rosa* agreements to the military judge, *United States v. Muller,* 21 M.J. 205 (C.M.A.1986); *United States v. Cooke,* 11 M.J. 257 (C.M.A.1981), so must they reveal information with the potential to vitiate an important provision of the pretrial agreement.

We have considered the appellant's personally-asserted allegation that the imposition of a bad-conduct discharge is inappropriately severe and determine that it is without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge GRAVELLE concur.