**UNITED STATES**

v.

**Martin R. TRUJILLO, Yeoman Third Class, U.S. Coast Guard.**

**CGCM 0057.**
**Docket No. 991.**

U.S. Coast Guard Court of Military Review.

30 June 1993.

Trial Counsel: CDR Peter K. Mitchell, USCG.

Assistant Trial Counsel: LCDR Craig H. Allen, USCG.

Detailed Defense Counsel: LT Kevin F. Bruen, JAGC, USNR.

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate Government Counsel: LCDR Charles J. Bennardini, USCG.

Before Panel Two, BAUM, GRACE and BASTEK, Appellate Military Judges.

BAUM, Chief Judge:

Appellant was convicted by general court-martial of three offenses in accor-

dance with his pleas of guilty entered pursuant to a written pretrial agreement.[1] Thereafter, as requested by Appellant, sentence was imposed by judge alone. That sentence consisted of a dishonorable discharge, confinement at hard labor for 24 months, total forfeitures, and reduction to pay grade E–1. The convening authority could have approved the adjudged sentence under the terms of the pretrial agreement, but, instead, reduced the dishonorable discharge to a bad conduct discharge and mitigated the confinement to 15 months. The remainder of the sentence was approved as adjudged.

# I

## ASSIGNED ERRORS

Seven errors have been assigned, none of which warrants favorable action. Two of Appellant's assignments question compliance with the Constitution in the appointment of the trial judge and judges on this Court, and also challenge the lack of tenure and collateral duty aspect of judicial duty on this Court. These issues have been decided contrary to Appellant's position in *U.S. v. Weiss*, 36 M.J. 224 (C.M.A.1992); *U.S. v. Kovac*, 36 M.J. 521 (C.G.C.M.R. 1992); *U.S. v. Senior*, 36 M.J. 1016 (C.G.C.M.R.1993); and *U.S. v. Webster*, 37 M.J. 670 (C.G.C.M.R.1993). Those decisions are dispositive and Appellant's assignments are rejected for that reason.

■ Four assignments relate to the military judge. Two of them challenge the adequacy of the military judge's guilty plea inquiry in failing to elicit sufficient facts to support the pleas. They are rejected because we find that the inquiry by the military judge established the requisite facts to support all the findings of guilty. The other two assignments assert errors by the judge in failing to disqualify himself from hearing the case and in failing to inquire completely into the pretrial agreement. Both of these assignments are deemed to be without merit and are discussed further in conjunction with other matters addressed. In rejecting the disqualification

assignment, we have taken into consideration matters revealed in a related case previously reviewed by this Court, as requested by Appellant.

■ Another assignment contends the punitive discharge is disproportionate. That assignment is also rejected. The offenses committed by this accused are such that we cannot say a punitive discharge is disproportionate, even when weighed against highly favorable evidence presented in Appellant's behalf both during and after trial. Ultimately, however, this matter will have to be decided again by a court-martial in light of action taken for other reasons.

# II

## CLEMENCY PETITION ASSERTIONS

■ Although the assigned errors have been rejected, certain post-trial assertions by the detailed defense counsel have raised questions which prompt this Court to set aside the sentence in the interest of ensuring the fairness and integrity of this proceeding. In a clemency petition to the convening authority after trial, defense counsel submitted allegations of legal error. Included was the contention, already noted as one of the assignments of error, that the military judge should have recused himself *sua sponte* because of highly prejudicial information he had received as presiding judge in an earlier trial of a co-accused.

The judge gave assurance that he would totally disregard anything he may have heard in the earlier case and counsel accepted that assurance when he failed to either challenge the judge or pursue the matter with *voir dire* questions. Accordingly, there was no reason for the judge's disqualification under either the Rules for Courts–Martial or case decisions. Nevertheless, counsel, in his post-trial petition to the convening authority, contends that the judge should have removed himself from the trial, despite acknowledging that court-martial rules and case law did not require that action.

The subject would not merit discussion were it not for something else revealed by defense counsel as part of his elaboration of this purported error. Counsel said: "Al-

---

1. Appellant was found guilty of the following offenses: one specification of attempted rape; one specification of conspiracy to commit inde- cent assault; and one specification of false official statement in violation of Articles 80, 81, and 107, UCMJ, 10 U.S.C. §§ 880, 881, 907.

though one might argue that YN3 Trujillo could have avoided the partiality of Captain Smith [the military judge] by exercising his right to members, this option was specifically excluded by YN3 Trujillo's pre-trial agreement." Petition for Clemency of 31 March 1992, paragraph 15.

### III

### AFFIDAVITS CONCERNING THE PRETRIAL AGREEMENT

Since the written agreement does not contain such a provision and counsel did not advise the judge at trial of any unwritten conditions, an order was issued by the Court seeking clarification. In response to that order, Appellant submitted an affidavit from detailed defense counsel which repeats the assertion that trial by members was foreclosed as part of the plea bargain. Counsel says that "although the written pretrial agreement did not specifically exclude members, it was my understanding, as Petty Officer Trujillo's defense counsel, that a condition to Petty Officer Trujillo's agreement was that, Petty Officer Trujillo would elect trial by military judge alone." Affidavit of 27 August 1992 from Kevin F. Bruen, LT, JAGC, USNR.

Significantly, trial counsel confirms this understanding in another affidavit submitted by Appellant. The lead Government counsel says:

1. ...

2. ...

3. After my arrival in California, the defendant originated the discussions on the offer to plead guilty and the related terms and conditions including waiving the Article 32 investigation and the waiver [of] trial by court-martial composed of members.

4. It was clearly understood by all parties that the waiver of trial by court-martial composed of members was an integral part of the pretrial offer. I had discussed this matter several times with the SJA. Defendant's written offer was submitted to the Convening Authority along with the offer of a defendant in a related case. In the related case, there was no offer in that case to waive trial by members. To the contrary, the defense made it clear throughout the negotiations that there would be no offer of waiving that right to proceed with members.

5. I was orally informed by the SJA that the convening authority had acted on both offers. The SJA stated that the Convening Authority had approved the two offers, one for a trial without members (Trujillo), and one for trial with members (the companion case).

Affidavit of 11 September 1992 from Peter K. Mitchell, Commander, U.S. Coast Guard.

A second affidavit from trial counsel submitted by Appellate Government Counsel states that the "earlier affidavit is misleading to the extent that it can be read to imply that the waiver of trial by court-martial composed of members was an integral part of the pretrial *agreement*." It goes on to explain that there was no binding agreement for the accused to request trial by judge alone, only an expression of intent to do so at the time discussions on the agreement were being held, which was relied upon by the Government. Trial counsel says the second affidavit "was prepared to supplement and clarify my affidavit of 11 September 1992 as it appears that the brevity of that earlier affidavit has engendered confusion." Affidavit of 29 October 1992 from Peter K. Mitchell, Commander, U.S. Coast Guard. To the contrary, it is the second affidavit that has engendered confusion.

Moreover, we do not find a companion affidavit from the assistant trial counsel to be helpful. Without indicating exactly what role he played, if any, in the pretrial negotiations, the assistant trial counsel says that to his "knowledge and belief there was never an oral or written agreement between the trial counsel team (CDR Pete MITCHELL and me) and defense counsel (LT Kevin BRUEN, JAGC USNR) that the accused was required to elect trial by military judge alone in order to obtain the protection afforded by the written pretrial agreement." Affidavit of 29 October 1992 from Craig H. Allen, LCDR, U.S. Coast Guard, Executive Officer, USCGC RESOLUTE (WMEC–620). Neither the first nor second affidavit from trial counsel mentions the assistant trial counsel as be-

ing involved in the negotiation of the pretrial agreement and neither affidavit indicates that there was any kind of agreement between the defense counsel and a trial counsel team.

## IV

## APPELLANT'S UNDERSTANDING AT TIME OF TRIAL

■ The problem presented by all of these post-trial statements from prosecution and defense is that they leave the question of the accused's understanding totally unsettled. If the negotiations leading to an agreement were such that the defense counsel had the belief that trial by judge alone was one of the terms, and the trial counsel also appeared to see it the same way when he signed his first affidavit, then it is reasonable to assume that the accused had a similar understanding. The subsequent affidavits from the two prosecutors, at best, render the situation ambiguous and do not provide an answer to what the accused actually understood at the time of trial. It is precisely to avoid this kind of confusion that we have a procedure that requires an inquiry on the record by the judge to establish everyone's understanding and head off the kind of post-trial questions that have been raised in this case. R.C.M. 910. *See also U.S. v. King*, 3 M.J. 458 (C.M.A.1977) and *U.S. v. Green*, 1 M.J. 453 (C.M.A.1976).

The judge properly followed that procedure, explaining his interpretation of the agreement and querying accused and counsel as to theirs. No one, however, alerted the judge to the possibility that waiver of trial by members was required by the plea bargain.[2] Accordingly, he had no reason to ask whether the accused had requested trial without members as part of the pretrial agreement. As a result, the record does

not provide a clear cut answer to the question before us now: Did the accused think he was bound to request trial by judge alone in order to receive the benefits of a pretrial agreement?

This is in marked contrast with the facts in *U.S. v. Sanchez*, 26 M.J. 564 (C.G.C.M.R. 1988) and *U.S. v. Huber*, 24 M.J. 697 (C.G.C.M.R.1987) where the written agreement included a provision requiring trial by judge alone. In those cases, the judge, aware of the provision, made a thorough inquiry that enabled this Court to determine from the record exactly what the accused knew, understood, and wanted to do. The situation here is also in marked contrast with the facts in *U.S. v. Schmeltz*, 1 M.J. 8 (C.M.A.1975) where, under the circumstances of that case, the Court of Military Appeals gave reluctant approval to such a pretrial agreement provision simply because of the penetrating inquiry by the judge which left no doubt whatsoever as to the accused's understanding and desires in the matter. Through no fault of the judge in our case, we are faced with a transcript that does not provide us with the kind of answer found in these other records.

■ Unfortunately, there is still another question with regard to the accused's knowledge and understanding when he requested trial by judge alone. As previously noted, the judge advised the accused and counsel of his prior participation in a companion case. After providing that information, the judge asked the accused if he had discussed this subject with his counsel. The defense counsel answered for the accused by saying that the matter had not been discussed.[3] The judge then asked the accused if he had any questions and, when the accused responded that he had none, continued with the trial. There is no indication in the record thereafter of any counsel/client discussion of this subject before

2. In fact, just the opposite appears from the following exchange with accused and counsel:
   MJ[:] Very well. Now, Petty Officer Trujillo, in order for you to obtain this agreement have you agreed to do anything or give up any right that is not actually described in the agreement itself?
   ACC: No, Sir.
   MJ: Does this pretrial agreement include all of the understandings of all of the parties to this case?

TC: Yes, Your Honor.
DC: Yes, Your Honor.
MJ: (To Accused) And you also?
ACC: Yes, Sir.
*Record at 50.*

3. The record reflects that the trial counsel answered the military judge's question, but that is

proceeding to the accused's request for trial by judge alone.

Counsel contends in his clemency petition to the convening authority that the judge "could not render a fair and impartial decision" because he heard testimony in another case "so highly prejudicial that it cannot be wiped from anyone's mind, despite their efforts." Defense Counsel's Clemency Petition of 31 March 1992, paragraph 15. While we do not agree with counsel in this respect, we are convinced that these are matters that should have been fully discussed with the accused before he made an election to be sentenced by that judge rather than by court members. Certainly, as a minimum, the accused should have been made aware of what was said in the other trial before he chose who would impose sentence. It is not apparent from the record that he had this information.

Further aggravating our problem with this case, is the appearance in the clemency petition of yet another asserted unwritten plea bargain provision that has not been addressed by anyone. Counsel in a different part of the petition claims that the accused "waived out-of-area witnesses as part of his pre-trial agreement" and, thus, was unable to have his mother testify at trial about compelling matters bearing on the sentence. Clemency Petition of 31 March 1992, paragraph 13. Again, there is absolutely nothing in the written agreement or responses to the judge to support such an assertion. It cannot be ignored, however, since it remains unrebutted and unresolved.

## V

### CORRECTIVE ACTION

It could have been helpful if the staff judge advocate, in his recommendation to the convening authority, had addressed defense counsel's two contentions concerning conditions not appearing in the signed plea agreement. The staff judge advocate certainly was in a position to provide an account of the facts from his perspective, as well as that of the convening authority. Such an account possibly could have resolved matters with certainty, with corrective action taken at that time if merited. Without that information, we are left with several choices: seek additional affidavits, order a *DuBay*[4] evidentiary hearing, or resolve the unanswered questions as best we can with what is before us now. We choose the last.

In taking this action, the opinions in *U.S. v. Cooke*, 11 M.J. 257 (C.M.A.1981) and *U.S. v. Myles*, 7 M.J. 132 (C.M.A.1979) are instructive. In both cases, the military judge asked if there was a pretrial agreement and received responses indicating there was not. Despite the replies at trial, post-trial assertions were made to the contrary and in both cases it was urged on appeal that the pleas of guilty were, thus, rendered improvident. The Court of Military Appeals ruled otherwise finding no judicial error, just as we have found in the instant case. The error, if any, rested with counsel. In this regard, the Court said in *Myles:*

> If the breach of a counsel's obligation to his client or the court is of the magnitude to rise to inadequate representation, then in that event a new trial must be ordered. Anything short of a finding of inadequate representation must be tested for prejudice to see if the error materially affected the substantial rights of the accused. As indicated earlier, appellant does not attack the voluntariness of the plea or its accordance with public policy. He makes no claim that such an agreement was breached by the convening authority. Accordingly, his fundamental right to enter a voluntary guilty plea was not abridged. Article 45, UCMJ, 10 U.S.C. § 845. (footnotes omitted)

7 M.J. at 133.

The Court in *U.S. v. Cooke, supra,* reiterated the basic point that, "if both trial

---

undoubtedly in error. From the context, it is clear that the defense counsel was speaking, not the trial counsel. The verbatim exchange was as follows:

MJ: Have you discussed this with Lieutenant Bruen [the defense counsel] at all?

TC: Your Honor, Petty Officer Trujillo and I have not discussed the fact that you presided on a previous case, but I have looked at the MCM and am satisfied with the judge's qualifications.

Record at 5.

4. *U.S. v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

counsel and defense counsel lack candor and conceal the existence of a pretrial agreement, the providence of a guilty plea is not automatically vitiated. Their failure to disclose in no way imputes error to the judge." *Id.* at 11 M.J. 260–261. The Court in *Cooke* went on to say:

> The argument is also made that, even if there was no pretrial agreement, appellant is entitled to have his guilty pleas set aside because he believed in good faith that such an agreement existed. We have two replies to this contention. In the first place, if an accused enters a guilty plea in the erroneous belief that a pretrial agreement exists whereunder the convening authority has obligated himself to grant certain relief, then the nonexistence of the agreement does not negate the plea's voluntariness if the convening authority grants the same relief for which the accused thought he had contracted. (footnote omitted). . . .

> Secondly, . . . a mistaken belief that a pretrial agreement exists is insufficient to justify setting aside a guilty plea that, as here, has been entered after a properly conducted providence hearing, which established that the accused believed he was guilty and that there was a "factual basis" for that belief.[5]

---

5. An accused's mistaken belief may be relevant to other grounds for setting aside a guilty plea—such as incompetence of defense counsel or overreaching by the prosecution.

*Id.* at 261.

Applying the principles from these cases to the one before us, we note that Appellant has not attacked his pleas as being involuntary or in some way violating public policy. Moreover, a properly conducted providence inquiry by the judge established that the pleas were, in fact, voluntary and that the accused believed in his guilt. The judge's inquiry also provided the necessary factual basis that established the accused's guilt. The judge also found the written pretrial agreement terms were in accordance with appellate case law, not against public policy and not contrary to fundamental fairness.

The asserted unwritten conditions, if they had been included in the agreement and explored at trial, also would not have been against public policy. Moreover, the agreement's sentencing relief was met in all respects by the convening authority. In fact, the approved sentence was even below that required by the agreement. Any possible prejudice to the accused, any possible overreaching by the Government, or any question of the adequacy of representation by defense counsel goes to the sentencing aspect of trial, not to the pleas. Accordingly, we find no reason to set aside the findings of guilty.

The problems we have discerned all relate to the sentencing phase of trial. Appellant's decision to waive trial by members and proceed with a judge who had previously heard possibly adverse matters was a decision as to sentencing forum. The asserted limitation on calling witnesses also had bearing only on the sentence. The shadow cast on this aspect of the trial impels us to return the record for resentencing. At such a rehearing, Appellant will be able to make fully informed choices on who will impose sentence and who will be called as witnesses.

Before leaving this subject, it is important to emphasize that, standing alone, any one of the problems we have noted may not have been sufficient to warrant our action in this case. Taken together, however, they leave us with too many doubts concerning Appellant's decision to waive trial by members and request sentencing by the judge. These doubts are not allayed by Appellant's answers on the record concerning the pretrial agreement's requirements.

When asked whether he had agreed to do anything or to give up any right that is not actually described in the agreement itself, Appellant said no. Both trial counsel and defense counsel gave the same kind of responses, indicating that the agreement included all of the understandings of all of the parties. Later statements from coun-

sel, as reflected in this opinion, have raised serious questions about their replies. If counsel's responses to the judge cannot be relied upon entirely at this point, certainly the accused's answers should not be given greater weight, influenced as they undoubtedly were by advice from counsel.

This leads us to possibly the most troubling aspect of this case, the question of counsel's performance. But for the post-trial statements concerning plea bargain requirements that directly conflict with those made at trial and the indication in the record that Appellant made his decision to be sentenced by the judge without full advice from counsel, defense counsel's representation of Appellant was more than adequate. He put on a good case in extenuation and mitigation and continued his conscientious representation of Appellant after trial, submitting extensive material to the convening authority in support of sentence reduction.

Overall, counsel's efforts in behalf of his client were such that we consider his missteps to have been inadvertent lapses. While his experience level is not indicated in the record, we are disposed to attribute these lapses simply to inexperience and we will not draw any adverse ethical implications from the conflict in his trial and post-trial statements. Unfortunately, the noted failings relate to such essential elements of a fair trial that we must take corrective action for Appellant.

In light of the foregoing, the findings of guilty are affirmed. The sentence is set aside and a rehearing on sentence is ordered. If a sentence rehearing is determined to be impracticable, a supplementary order should be issued by proper authority reflecting that fact and that the findings of guilty have been affirmed with no sentence.

Judge BASTEK concurs.

GRACE, Judge (concurring).

I concur. I am compelled to state separately my concerns about this case. The Chief Judge in his opinion completely lays out the circumstances surrounding the guilty pleas and pretrial agreement. The military judge asked two simple, clear and direct questions: "Now, Petty Officer Trujillo, in order for you to obtain this agreement have you agreed to do anything or give up any right that is not actually described in the agreement itself?" and "Does this pretrial agreement include all of the understandings of all of the parties to this case?" Record at 50. The three people who were in the best position to know answered those questions; the accused, the trial counsel and the defense counsel. All three were under oath and the trial and defense counsels are both officers of the court.

The taking of a sworn oath is a serious business. Our whole legal system is built on the presumption that people tell the truth when under oath. There are serious penalties for those convicted of perjuring themselves. The questions were simple and the answers clear. There was no ambiguity. It was not until the clemency petition was presented that questions were raised about binding conditions outside of the pretrial agreement. I am inclined to say that all parties, including the accused, should be bound by their sworn statements made during the trial and that parol evidence presented later should not be allowed. However, since the rights of the accused must be protected and it is clear that his defense counsel did not discuss with him the ramifications of being sentenced by a judge who had heard highly prejudicial information about the accused in an earlier trial, I concur in the Chief Judge's opinion.